## HARRIS COUNTY INV. CO. v. DAVIS.
### (No. 680.)

(Court of Civil Appeals of Texas. Beaumont.
April 27, 1921.)

**1. Vendor and purchaser ⬤⇒110—Vendor held not to have offered to perform obligation to deliver bond within reasonable time.**

Where the vendor of a lot agreed to deliver a certain gold bond to the vendee when 24 regular monthly installments had been paid, and such installments were paid, but the vendor made no effort to comply with the provision till almost 4 years after its obligation matured, the vendor did not offer to perform within a reasonable time.

**2. Vendor and purchaser ⬤⇒114—Vendee held to have waived right to insist bond be delivered on contract date.**

Where the vendee of land continued to make monthly payments long after the vendor's obligation to furnish a certain gold bond had matured by the making of 24 monthly payments, she waived her right to insist that the bond be delivered to her on the contract date.

**3. Vendor and purchaser ⬤⇒120—Vendee, who waived vendor's default in tendering bond, could refuse to wait longer.**

Where the vendor of land, not being in default in her monthly payments, waived the vendor's default in not tendering a certain gold bond after 24 monthly payments had been made, and extended indefinitely the time for performance, she could after 4 years of delay by the vendor refuse to wait longer and fix time for performance by notifying vendor.

**4. Vendor and purchaser ⬤⇒110—Vendee disaffirming for vendor's nonperformance not required to show damages.**

Where the vendor of land failed to tender a certain gold bond to the vendee after she had made 24 monthly payments as the contract required, and the vendee, though waiving such default, ultimately refused to wait longer, it was not incumbent upon her to show damages as a basis for her disaffirmance on account of the vendor's nonperformance.

**5. Vendor and purchaser ⬤⇒110—Bond tendered by vendor held not in compliance with contract as to number of lot and date of maturity.**

Tender by the vendor of a lot of a certain gold bond covering lot 16 was not in compliance with its contract calling for a bond to cover lot 18, and an agreement maturing December 10, 1928, was not in compliance with the contract calling for a bond to mature January 15, 1925.

**6. Vendor and purchaser ⬤⇒110—Tender by vendor after vendee's disaffirmance came too late.**

Where the vendor of a lot delayed almost four years in the performance of its obligation to tender a certain gold bond to the vendee after she had made 24 monthly payments, tender by the vendor after the vendee had disaffirmed the contract came too late.

**7. Vendor and purchaser ⬤⇒116 — Vendee could disaffirm for vendor's breach without tendering reconveyance, though she had acquired equitable title.**

Though the vendee of land, disaffirming her purchase of a lot for the vendor's default, had acquired superior equitable title to the lot by reason of the fact that she had paid for it under the terms of her written contract, a conveyance by her to the vendor was not necessary to revest title in the vendor, and the vendee had a right to disaffirm for the vendor's breach without tendering reconveyance.

**8. Vendor and purchaser ⬤⇒86—Filing of vendee's suit for money paid an abandonment of her rights.**

Filing of suit by the vendee of a lot for money paid by her to the vendor on account of the vendor's breach by failing to deliver a certain gold bond as agreed was an abandonment of the vendee's rights under the contract.

**9. Courts ⬤⇒163—Vendee's suit in disaffirmance held not to involve title to land.**

The county court had jurisdiction of suit by the vendee of a lot to recover from the vendor money paid by her on account of the vendor's breach in failing to deliver a certain gold bond as agreed when 24 monthly payments had been made; nothing in the vendee's pleadings involving title to the lot, and in protection of the vendor's right the court not being required to enter any order involving title.

**10. Courts ⬤⇒163—Equity would divest vendee and reinvest rights in vendor in disaffirmance suit, so that title to land was not involved on theory of equity of vendee.**

Though equity vests certain rights in the vendee of a lot on the ground that she has paid the purchase money, it could divest her of such rights and reinvest them in the vendor, in vendee's suit for disaffirmance on account of the vendor's breach, when the latter repaid the vendee the purchase money, no decree of the court being necessary to effect that purpose; and hence the suit was not one involving title, nullifying county court's jurisdiction by reason of such equity.

**11. Vendor and purchaser ⬤⇒335 — Vendee, who did not breach contract, came into court with clean hands in disaffirmance suit.**

The vendee of a lot, who, under the terms of her contract, was not to be in default in her payments unless she was delinquent 2 months, came into court, in her suit for disaffirmance on account of the vendor's breach, with clean hands, where during all the years of her contract she did not breach it by failing to make payments for more than 2 months.

**12. Vendor and purchaser ⬤⇒341 (5)—Vendor liable in disaffirmance suit for interest from date it received price.**

In suit by the vendee of a lot against the vendor to recover back the price paid for the vendor's breach, the vendor was liable to the vendee for the money paid by her, with legal interest thereon from the date it received the money.

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Harris County Court; Roy F. Campbell, Judge.

Suit by Margaret Davis against the Harris County Investment Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Sewall Myer, of Houston, for appellant.

Woods, King & John, of Houston, for appellee.

WALKER, J. Appellee makes the following succinct statement of the nature of this suit:

"On January 15, 1913, the Kendall Realty Company contracted to sell appellee lot 18, in block 11, Southland addition to the city of Houston, appellee agreeing to pay therefor $343.75, $10 down and $5 on the 15th day of each month until paid in full; the contract also providing: 'When twenty-four regular monthly installments have been paid, the Kendall Realty Company agrees to have issued and delivered to the purchaser a gold bond issued by the Federal Guaranty Company, of Washington, D. C., the face value of which shall be the full purchase price of said lot'—and which, according to form for such bond attached to the contract, was a promise to repay to appellee a sum of money on appellee deeding to said Federal Guaranty Company the land described at a period in the future to be fixed. The contract also provided: 'If the buyer fails to pay, or allows the monthly payments to become delinquent for more than two months, except in cases of illness or accident, as hereinbefore provided, the seller may, at its option, either declare the entire balance of the purchase price due and collectible, or rescind this contract.'

"It was agreed in open court that appellant assumed any obligation the Kendall Realty Company was under by virtue of this contract, and that it would be liable under such circumstances as the Kendall Realty Company would have been liable. Appellee was furnished a book in which was noted the payments as made by her. * * * At no time was appellee 'delinquent for more than two months.' This list of payments shows that the twenty-fourth payment was made in January, 1915. Appellee testified: 'I made the payments every month, about the 15th of the month. * * * I kept that up all the way through, with the exception of one month when the payment lapsed to the next month. I made my April payment in May, * * * one of them, that was 1918. The May payment was made in June, and my June payment in July. Also my July payment in August, 1918, and my August payment in September, 1918.'

"On June 17, 1918, appellee wrote appellant informing it that the bond which should have been delivered to her in January, 1915, had not been delivered, and stating that she wished to put them on notice that she desired the bond, which should be dated twenty-four months from the date of the contract, or should bear date on January 15, 1915. B. R. Davis testified: 'I remember something about requesting them prior to June, 1918, to deliver to me or my wife the gold bond. I went up to the office in May, 1918, and I asked them what about the bond. I was talking to Mrs. Gray. I told her the bond had not been received, and I wanted to know what about it, and she told me they couldn't send for the bond until they had a batch of something like ten; that that was the usual custom for Mr. Kendall to sign up for ten and send for them. So I went out. That was just before this letter was written in June. After I wrote that letter in June, 1918, demanding the issuance of that bond, they did not reply to that letter. Regarding what happened next relative to that bond, the next month I went up to make payment again. That was in July after I wrote the letter. I asked them what about the bond, and was never able to get very much out of them. I understood that the bonds had not been sent for. I so understood from Mrs. Gray. The next month when I went up to make payment, I asked her about the bond again, and it was about the same reply. The bond either hadn't arrived, or they hadn't sent for it. I don't recall exactly. I did make a payment in September, and I mentioned the bond then. That was the last payment I made. That was the final payment, $3.75. I did authorize Woods, Barkley & King to write the letter of December 5, 1918, and as far as I know, there has never been any reply to that letter. They have never tendered me or my wife, so far as I know, this gold bond. Between June 18, 1918, and June 21, 1919, they did not come to me and tell me, or tell me over the 'phone, or tell me in any manner, that they were ready to deliver that bond, they or anybody representing the Harris County Investment Company.'

"On December 5, 1918, the firm of Woods, Barkley & King, representing appellee, wrote the Harris County Investment Company as follows: 'Mrs. B. R. Davis, formerly Miss Margaret Bosworth, has employed this firm to collect the sum of $343.75 paid under contract of date January 15, 1913, on lot 18, block 11, Southland addition, originally by Kendall Realty Company, but the most of which payments have been made to your company under the terms of said contract. This contract was finally paid out September 12th, and though she has often demanded the bond which was contracted to be delivered to her as a guarantee for the return of purchase money, the same has never been delivered, and she therefore desires the return of the purchase money, and has requested suit to be filed unless you are willing to return to her the $343.75 paid. Your immediate reply will be appreciated.'

"J. J. Settegast, Jr., witness for defendant, testified that he was president of the Harris County Investment Company; that he did not devote his time to the details of the business; 'that was all intrusted and left to Mrs. Gray.' Mrs. Gray testified that when the bond was demanded of her in the summer of 1918, she promised to write for the same, that she was taken with influenza in October, 1918, and was out of the office until the middle of December, or during part of the months of October, November, and December, 1918. She further testified: 'All these bonds were ten year bonds, they were for ten years. That was the rule. * * * All of them were for ten years. Now,

when I was out of the office, Mr. Settegast was in Houston at that time, and so far as I know he was in the office'—and further: 'Mr. Davis came in and made some payments and asked if the bonds were there, and I would answer him that it hadn't arrived. He would come in and just ask about the bonds and if I had received them, and I would tell him it hadn't arrived. It was in the latter part of the summer when I wrote the first letter about this bond. When they requested me to write for the bond I did.'

"The bond finally tendered appellee and refused * * * bears date December 10, 1918, and is payable ten years after date on, to wit, December 10, 1928. It does not cover lot 18, block 11, but, on the contrary, covers lot 16, block 11. The witness Crawford testified that in behalf of appellant he went to the office of the attorneys for appellee and tendered them the abstract of title, the general warranty deed and the gold bond, which said attorneys refused to accept. Mrs. Gray testified that Crawford brought the bond, deed, and abstract back to appellant's office. On December 14, 1918, appellee brought suit to recover of appellant the payments made by her under the contract, and interest."

On a trial before the court without a jury, she recovered judgment for the relief prayed for.

Appellant advances the following propositions: (1) That time was not of the essence of the contract and that there was a good excuse for delay in its performance; (2) that appellee waived appellant's breach; (3) that she suffered no damage justifying her in rescinding; (4) that she declined to accept the tender; (5) that she is still holding onto the title, which she is refusing to convey; (6) that there was no jurisdiction in the county court; and finally (7) that her hands are unclean. We will discuss them in the order named.

[1] 1. Appellee does not contend that time was of the essence of the contract. If appellant had a reasonable time in which to comply with the gold bond provision, it follows that the court, in rendering judgment for appellee, must have found that appellant did not offer to comply with this provision within a reasonable time. The contract was executed the 1st day of January, 1913. The gold bond was to be delivered when she had made 24 regular monthly payments. Appellant, without any reasonable excuse, made no effort to comply with this provision until almost 4 years after its obligation matured. The bond tendered covered lot 16, in block 11, and matured the 10th of December, 1928. The contract called for a bond covering lot 18, and maturing the 15th day of January, 1925. The tender of such a bond was not in compliance with the contract, even under appellant's proposition.

[2] 2. In view of the fact that appellee continued making her payments long after appellant's obligation to furnish the bond had matured, it must follow that she waived her right to insist that the bond be delivered to her on the contract date. This is only saying that she treated the contract as being in full force until she declared the waiver in December, 1918.

[3] This contract did fix the time for performance—after the payment of 24 monthly payments. Appellee made these first 24 payments on their respective due dates. Then she was clearly within her rights when, after almost 4 years of delay by appellant, she refused to wait longer. The rule is thus stated in 39 Cyc. 1547:

"If the purchaser, not being in default, waives a vendor's default and extends indefinitely the time for performance, he may at any time refuse to wait longer, and a subsequent tender will be too late. If the contract fixes no time for performance, the tender must be made in a reasonable time; and where the performance is to take place on the happening of a certain event, tender must be made within a reasonable time after the happening of such event."

But, if we read into the contract a "reasonable time" provision, as we have said in paragraph 1, the court did not err in holding that appellant had not tendered performance within a reasonable time. In fact, as we construe this record and the facts found by us, appellant has never tendered a performance of its obligation. The bond tendered was not the bond it contracted to deliver.

[4] 3. It was not incumbent upon the appellee to show damage as a basis for her disaffirmance. Appellant had contracted to do a certain thing, material to the interest of appellee. This it neglected and failed to do, after repeated demands by her. When appellant breached this contract, appellee had the right to disaffirm the contract and sue for her money back.

"Upon breach of the contract between parties by the vendor, the purchaser may affirm the contract and sue the vendor, either at law for damages or in equity for specific performance, or he may disaffirm the contract and bring an action to recover back the purchase money which he has paid, or he may sue in equity for rescission." 39 Cyc. 1997.

[5, 6] 4. We do not find that she declined to accept a tender of the bond provided for in the contract. No such bond was ever offered her. A bond covering lot 16 is not in compliance with a contract calling for a bond to cover lot 18, and a bond maturing 10th day of December, 1928, is not in compliance with a contract calling for a bond to mature the 15th day of January, 1925. But, had the bond been in compliance with the terms of the contract, she was not required to accept it. Appellant had delayed almost 4 years in the performance of its obligation, and a tender, after appellee had

disaffirmed the contract, came too late. 39 Cyc. 1547.

[7, 8] 5. Appellant did not convey to appellee the legal title to lot 18. This title has remained in it all these years. While appellee had acquired the superior equitable title by reason of the fact that she had paid for the land under the terms of the written contract, a conveyance by her was not necessary to reinvest it in appellant. The payment of the purchase money vests in the vendee the equitable title. Gilmore v. O'Neil, 107 Tex. 18, 173 S. W. 203. Appellee had the right to disaffirm when appellant breached the contract, without tendering a reconveyance. 39 Cyc. 1404, 1426, 1996, 1997, 2005; North Texas Building Co. v. Coleman, 58 S. W. 1044; Riverside, etc., v. Husted, 109 Va. 688, 64 S. E. 958; Newberry v. Ruffin, 102 Va. 73, 45 S. E. 733; Harbor Business Blocks v. Gregory, 102 Kan. 33, 169 Pac. 191; Harding v. Olson, 177 Ill. 298, 52 N. E. 482. This right was not waived because not insisted on immediately. At any time she had the right to refuse to wait longer. 39 Cyc. 1547. This right to disaffirm she exercised. The filing of the suit for the money paid by her was an abandonment of her rights under the contract. Of course, she could not hold the title and also have her money back. Teague v. Williams, 6 Tex. Civ. App. 468, 25 S. W. 1048. But she is not asking for that.

[9, 10] 6. The county court had jurisdiction of this cause of action. Nothing in appellee's pleadings involved the title to this lot. She sought no relief bringing this title before the court. In protection of appellant's rights, the court was not required to enter any order involving the title. When appellee disaffirmed the contract, she abandoned her equity in the lot. 39 Cyc. 1997. If we were in error in this conclusion, clearly, appellant would be fully protected by the payment of the judgment. Equity, having vested certain rights in appellee on the ground that she had paid the purchase money, would divest her of that right and reinvest it in appellant when it repaid to her the purchase money. No decree of the court was necessary to effect that purpose. Mixan v. Grove, 59 Tex. 573, is very much in point on this proposition.

[11] 7. Appellee came into court with "clean hands," even if that maxim could be invoked under these facts. By the terms of the contract she was not to be in default in her payments unless she was delinquent 2 months. During all the years of her contract, she did not breach this provision.

[12] We should add, further, that the trial court did not err in allowing appellee interest from the date of her respective payments. Appellant, having breached its contract, was liable to appellee for the money paid by her, with legal interest thereon, from the date it received the money.

The judgment of the trial court is in all things affirmed.