Treiber v. Shafer.

---

## TREIBER *et al.* v. SHAFER *et al.*

1. **Practice: CROSS-BILL.** Under the Revision of 1860, no notice to the plaintiffs of the filing of an answer asking affirmative relief is necessary. When, under the Code of 1851, a suit was brought for minors, "by their mother, next friend and guardian," it was not necessary to serve upon such minors original notice of the filing of an answer in the nature of a cross-bill.

2. **Minor: GUARDIAN AD LITEM.** Where in a proceeding, under the Code of 1851, against minors, the mother was permitted by the court to, and did, come in and defend for them, it was held, that the decree should not be reversed because there was no formal entry of the appointment of a guardian *ad litem*.

3. **Decree: FORECLOSURE.** A decree in foreclosure ordered "that special execution issue against said defendants for the sale of said property according to law," &c., &c. *Held,* that while the decree should follow the statute and order a sale of so much of the property as is necessary to satisfy the mortgage, the defect was one of form merely.

4. —— **APPEAL.** Objections to the form of a decree, in foreclosure, should be presented to the court in which the decree was entered, before appeal.

Treiber v. Shafer.

*Appeal from Lee District Court.*

SATURDAY, DECEMBER 17.

CROSS-BILL: PROCEEDINGS UNDER: FORM OF FORECLOS-
URE, DECREES, &c. In 1852 one David Treiber, deceased
(father of the infant plaintiffs, and husband of Maria
Treiber, since by marriage Maria Walters), alone executed·
to the defendant George Shafer, for money borrowed, a
mortgage upon certain lots in Keokuk for $1,000 and
interest. Treiber shortly afterwards died *en route* to
California.

After his death, his widow, the said Maria, executed a
mortgage in her own name to the said Shafer, for $548,
upon the same lots with warranty of title. The considera-
tion of this mortgage was for money borrowed of Shafer,
to redeem a portion of these lots from a sheriff's sale, in
favor of another party. The lots thus mortgaged are
alleged by the said Maria to be the property of the heirs-
at-law of the said David. In 1856 two separate suits were
brought to foreclose these two mortgages, the one against
the minor heirs of the said David, four in number; the
other against Maria the widow, then by second marriage
Maria Walters. The mother was not joined or *served* in
the action against the heirs-at-law; but the minors were
served personally with notice, and a guardian *ad litem* was
appointed to defend for them. The husband of the said
Maria was not joined or served in the foreclosure proceed-
ing against her, but *she* was duly and personally notified.
No defense was made to either of these actions, and decrees
of foreclosure in both were rendered at the October Term,
1856, of the Lee District Court.

In May, 1860, the *present action* was brought. The
petition is entitled as follows: "Charles Treiber, David
Treiber, Paulina Treiber, and Mary Treiber, minors by
their mother, next friend and guardian, Maria Walters;

and Maria Walters in her own right who is now the wife of Charles Walters, was wife of David Treiber, deceased; and Charles Walters who joins with her for the purpose of this suit, *v.* George Shafer and H. M. Griffith, sheriff of Lee county, Iowa."

This petition claims to be entitled to a credit growing out of an alleged partnership, in a venture to California, between David Treiber, deceased, and the defendant Shafer; says that this credit is enough to pay both decrees and mortgages, and claims to be relieved against those decrees for the irregularities before named, and asks for a temporary injunction to stay a threatened sale by the sheriff on those decrees.

The defendant Shafer answered, admitting the existence of his decrees, averring the justice of his debt, and denying the alleged partnership, or that he had ever been in any way paid. "And, for further answer in the nature of a cross-bill," he sets up the two mortgages, and prays that if his former foreclosures thereof shall, for any reason, be found illegal or irregular, they may *now be foreclosed.*

To this the plaintiffs replied. But *notice* of the cross-bill does not appear to have been served upon the plaintiffs. Nor is there any formal order appointing the mother or other guardian to defend the said cross-bill. The mother did, however, answer this cross-bill as the mother and natural guardian of the said minors.

Upon the issues thus made a large volume of testimony was taken, and the cause fully heard upon its merits, upon the bill, answers, cross-bill and evidence. The court found that the minors were properly and legally in court by "their guardian, next friend and mother, Maria Walters;" and that the alleged partnership was not proved; that no payments beyond those credited had been made upon the mortgages held by Shafer; that the mortgages were justly due; but the court set aside the former decrees and

rendered, as prayed in the cross-bill, separate decrees of foreclosure of both mortgages.

Maria Walters and the Treiber heirs appeal.

*Rankin & McCrary, Marshall & Todd,* for the appellants.

*J. M. Beck* for the appellees.

DILLON, J. — I. The finding of the court below, that no partnership between David Treiber and Shafer was proved to exist, and that no credits on the mortgages beyond those allowed had been established, was so manifestly correct that this point was substantially abandoned by the learned counsel for the appellants on the argument. We need not further notice it.

II. The appellants' counsel next makes the point, that 1. PRAC- the decree must be reversed, because no notice of TICE: cross-bill. Shafer's answer in the nature of a cross-bill was served upon the minor plaintiffs in the original bill; and no guardian *ad litem* appointed to defend for them; or if one was admitted to defend for them it was erroneous, because no notice had been served upon the minors.

The original bill was filed before the Revision took effect, the cross-bill afterwards. We use in this case the terms original bill, and cross-bill for convenience, but under the Revision, which was designed to assimilate the pleadings, and to a great extent the proceedings in law and chancery actions, the word "*petition*" takes the place of the word "*bill*" as heretofore used in chancery, and "*declaration*" as used at law. Rev., § 2875.

And an *answer* takes the place of, or is made to perform the functions of, a cross-bill. Rev., § 2880, cl. 2883, *et seq.;* Van Santv. on Code Pl. (2d ed.), 573, *et seq.*

If the question thus made could be treated as properly arising under the Revision, it would be of very easy solution. An "original notice" to the plaintiffs of the filing

of an answer praying affirmative relief, would no more be necessary than such notice would be necessary where the answer prayed no such relief.

But the question remains to be examined under the Code of 1851, and the general principles of equity practice. Infants sue *in equity* by their next friend. It is, in Mr. Story's opinion, a matter of great doubt whether an infant can sue *in equity* by his *guardian*, but infants must defend a suit by guardian duly appointed or admitted by the court. Story Eq. Pl., § 57, 58, *note* 70.

The Code of 1851 provided that "minors may sue by their guardians," "and may also defend by guardian." "Those who have no guardian may sue by next friend." "The court may appoint a guardian *ad litem* to defend for a minor who has no other guardian." §§ 1688, 1689.

The original bill was clearly within either rule; it being brought by the infants "by their mother, next friend and guardian." The suit was therefore properly instituted, and the infants were in court for all the purposes of that suit. So far is clear and undisputed.

The next question is: were they in court as respects the matter set up by the "answer in the nature of a cross-bill"?

Under the former equity practice a cross-bill proper was a defensive proceeding merely, and has been defined as "an instrument of defense for the defendant in the original suit." Lube Eq. Pl., 142, note.

The so styled cross-bill in the case at bar was strictly a cross-bill, as it made no new parties, and related exclusively to the matters in question in the original bill. *Harp* v. *Hayne*, 3 Cal, 19; *Gallatin* v. *Cunningham*, 8 Cow., 361.

And in such case, aside from statutory regulations, the bill and cross-bill make but one cause. Mitford Eq. Pl., 6581; *Field* v. *Sheiffelin*, 7 John. Ch. R., 252; Coop. Eq. Pl., 85; 8 Cow., 361, *supra; Kemper* v. *Macrell*, 3 Atk., 812, *per* Lord HARDWICKE.

The cross-bill may be filed "forthwith," upon the filing of the original bill; (Lube Eq. Pl., 143); or at the time of putting in the answer to the original suit. 1 Barb. Ch. Pr., 129; *White* v. *Buloid, et al.* 2 Paige, 164.

It is a fair deduction alike from these authorities, and from the nature of the proceeding itself, that such a cross-bill as the one under consideration, cannot justly be regarded as in the nature of an original suit, in such a sense that the statutory process or notice must necessarily be issued and served upon the plaintiffs in the same manner as the original bill.

The notice formerly required on cross-bills was, as we infer from the authorities, a matter wholly regulated by the practice of the court. It is not with us a statutory requisite. And for this we have the express authority of Lube, who says (Eq. Pl., 143): "*The defendant to a cross-bill being already in court by the original bill,* service of process on his clerk in court is good service." *Gardiner* v. *Mason*, 4 Bro. C. C., 478; *Anderson* v. *Lewis*, 3 Id., 430, and notes by Mr. Eden. See, also, 1 Eden on Inj. (2 Am. ed.), 77, *et seq.* The case at bar was an injunction bill as well as a bill for relief. These authorities show that the service of a subpœna in *cross-cause* is entirely a matter of practice, and regulated by the courts. Indeed, in *Anderson* v. *Lewis*, *supra*, the Lord Chancellor went so far as to say that "the plaintiffs in the original cause, who were defendants in the cross-cause, must appear gratis and put in an answer in the second cause, before they could pass publication in the first cause." The same rule would, of course, apply, in this respect, to infants and adults.

The mother was admitted by the court to defend as guardian. She did defend as such, and the testimony was 2. MINOR: fully taken, and the cause tried upon this defense. guardian ad litem. We do not think the decree ought to be reversed under such circumstances, because there appears no formal

entry that a guardian ad litem was appointed. Under the statute above quoted, if the general guardian defends by the sanction of the court, a guardian ad litem need not also be appointed. Code 1851, § 1889, supra.

III. The decree against the minors, after describing the property, ordered "that special execution issue against the 3. DECREE : said defendants for the sale of said property accord-
foreclosure. ing to law, and that such sale be absolute and without redemption, and that the sheriff execute a deed upon making such sale to the purchaser." The decree against ·Maria Walters orders "special execution against her for the sale of said real estate."

The appellants contend that the decree falls within Maloney v. Fortune, 14 Iowa, 417. The statute requires the court to "direct the mortgaged premises, or so much thereof as is necessary to be sold to satisfy the amount due, with interest and costs." § 3661. In · Maloney v. Fortune, the mandate of the court to the officer, was imperative to sell "all and singular." The officer was left no discretion. · Here his hands were not thus tied. It would be his duty to sell only so much as should prove necessary, "to sell according to law." Waldo v. Williams, 2 Scam., 470 ; County of Polk v. Sypher, 17 Iowa, 358.

It were better that decrees should pursue strictly the language of the statute ; but objections of this kind ought to 4. — be specifically called to the attention of the court appeal. below. The clerical or inadvertent error, or omission, could be there corrected at once, and without expense, on motion. Rev., § 3545.

IV. It is next objected that the decrees below should have made provision for the equities of Mrs. Walters. This objection is not well taken. She was found to have no equities against the defendant. Her bill was not adapted to ascertain and determine whether she has any against the heirs. To have determined this, would have been outside of the bill or cross-bill, as well as premature.          Affirmed.