# Richmond.

## WILLIAMS V. GIFFORD, ET ALS.

### September 25, 1924.

1. BILLS AND NOTES—*Transferor by Delivery of a Bill or Note Payable to Bearer or Endorsed in Blank—Liability.*—A transferor by delivery of a bill or note payable to bearer or endorsed in blank, being a mere conduit for the transfer of its legal title, incurs no liability.

2. BILLS AND NOTES—*Mortgages and Deeds of Trust—Assignment of Bill or Note as Assignment of Deed of Trust or Mortgage.*—In Virginia, as to common law securities, the law is that both deeds of trust and mortgages are regarded *in equity* as mere securities for the debt, and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it, and as to the assignees the maxim, *prior in tempore portier in jure,* must apply, and the assignee, having the first assignment of the evidences of the debt, must be paid first.

3. MAXIMS—*Equities Equal—Transferor by Delivery of the Bill or Note.*—In applying the rule that the transferor by delivery of negotiable paper payable to bearer or endorsed in blank incurs no liability, the well-established rule of courts of equity in applying legal rules "that where equities are equal the law will prevail" must not be overlooked.

4. BILLS AND NOTES—*Transferor by Delivery of Bill or Note Payable to Bearer or Endorsed in Blank—Liability of Assignor—Case at Bar.*—A husband purchased an apartment house paying $3,500.00 in cash and giving his note for $10,000.00 secured by deed of trust for the balance of the purchase price. He then conveyed the property to his wife for love and affection. Then as agent for his wife he agreed to convey the property to one T., free of encumbrances, in exchange for property of T., which, as subsequently developed, was encumbered to its full value. In addition, T. was to give the wife notes payable at different times for $35,000.00 secured by deed of trust on the apartment house. The husband and wife conveyed the apartment house to T., who executed a deed of trust on the property to secure the notes for $35,000.00. These notes were payable to T. and endorsed in blank. The deed and deed of trust were recorded by the husband. It did not appear that the notes were delivered to the wife. T. never conveyed his property, the subject of the exchange, to the wife, and the contract of exchange was never exe-

cuted. The husband transferred one of T.'s notes for $2,000.00 par value; and it came into the hands of complainant as a *bona fide* holder for value. At the request of the husband the property was sold under the deed of trust to T. and purchased by the husband for $13,550.00, $3,550.00 more than enough to satisfy the prior deed of trust. Whereupon the husband demanded that the remainder of T.'s notes held by him should participate in this $3,550.00 *pro rata* with the $2,000.00 note held by complainant, invoking the rule of law that the transferor by delivery of negotiable paper endorsed in blank incurs no liability.

*Held:* That the wife was responsible for the acts of the husband and the burden was on her to show equal equity with the complainant. Moreover, the rule invoked only applies to *bona fide* holders, and as it did not appear that the notes had ever been delivered except perhaps in escrow until the contract of exchange was completed, the wife was not a *bona fide* holder.

5. BILLS AND NOTES—*Creator of Worthless Securities Does not Come into Court with Clean Hands.*—The creator of an issue of negotiable notes with no value to them, and who puts them in circulation, thus to get something for nothing, does not come into court with clean hands, and will not be heard to invoke a rule of justice to protect him or his principal in his wrongdoing.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Michael Cooper* and *Jas. G. Martin & Bro.,* for the appellant.

*H. B. G. Galt,* for the appellees.

CHRISTIAN, J., delivered the opinion of the court.

On February 12, 1919, H. A. Williams, Jr., purchased from D. Pender and wife that certain lot situated in the city of Norfolk, and known as the Plaza apartment, for

$13,500.00.    He apparently paid Pender $3,500.00 cash, less his real estate agents commissions and gave Pender his note for the balance of the purchase money.    A little over a year thereafter H. A. Williams, Jr., conveyed said apartment to his wife, Marthena H. Williams, for love and affection.

In December, 1921, H. A. Williams, Jr., as agent for his wife, agreed to convey said Plaza apartment free of all encumbrances to William H. Taylor in exchange for his farm in Princess Anne county, Virginia, upon which there was a deed of trust securing $16,500.00 and certain personal property thereon valued at $2,900.00.    In addition to the property aforesaid Taylor was to give Mrs. Williams his notes, payable at different times, for $35,000.00, secured by deed of trust upon the Plaza apartment.    Taylor's farm was to be conveyed, not to Mrs. Williams, but to R. G. P. Bugg, the brother-in-law of H. A. Williams, Jr.    Williams, Jr., acted as agent for both parties to this contract and was to get commissions from each of them.

Williams, Jr., and wife conveyed the Plaza apartment to Taylor who contemporaneously executed a deed of trust to Williams' father and partner, and Wailes Hank, trustees, to secure his, Taylor's, various negotiable notes, payable to himself, and endorsed in blank.    It will be observed that said notes were not made payable to Mrs. Williams, nor does it appear that they were ever delivered to Mrs. Williams, and that the deed and deed of trust were put to record by Williams, Jr., and not Taylor.    Besides, Williams, Jr., was to manage said apartment, collect the rent, and pay said rent upon the notes for the period of five years on certain conditions. It is stated by Williams, Jr., that he took out $32,000.00 of insurance on said apartment at the cost of Taylor to protect his wife, Mrs. Williams.

Taylor never conveyed his farm in Princess Anne to Mrs. Williams, or Bugg, but left Norfolk, as stated in oral argument, and the contract of exchange was never executed or the prior deed of trust upon the Plaza apartment, held by one of the Norfolk banks, released as agreed in the contract of exchange. Taylor's farm was sold under the deed of trust and did not bring more than enough to pay off the debt secured.

In this incomplete condition of the executory contract of exchange between Williams, Jr., and Taylor, the record shows Williams, Jr., transferred one of the notes aforesaid for $2,000.00 of Taylor through his sister, Mrs. Bugg, to Meredith Gerow, in part payment for his residence in Larchmont, Norfolk county; the purchase of the Gerow residence was made in the name of his brother-in-law, R. G. P. Bugg, and the deed thereto made to his sister, Mrs. Bugg. Gerow passed said $2,000.00 note to Mrs. Jane Carney Gifford in part payment for two lots in the plan of the Westover Company.

Matters remained in this condition for about six months, except that the Plaza apartment yielded very little, if any, rent because in an undesirable neighborhood and in bad repair, whereupon said Williams, Jr., requested the trustees to sell the same, and at said sale he became the purchaser thereof at $13,550.00. In his evidence he says he purchased same for a corporation to be composed of himself, his two sisters, and brother-in-law. Be this as it may, when settlement was to be made with the trustees Williams, Jr., is found still in possession of $33,000.00 of the Taylor notes, the $10,-000.00 prior lien held by the bank unsatisfied, and he demanded that the notes he held *pro rata*, in the $3,500.00 with the note held *bona fide* by Mrs. Gifford for $2,000.00. Whereupon Mrs. Gifford applied for an

injunction restraining the trustees from making a *pro rata* distribution as aforesaid to the Circuit Court of the city of Norfolk. After full hearing the learned chancellor of said court perpetuated the injunction and ordered the trustees to pay off the lien held by the bank and out of the residue to pay the $2,000.00 note, held by Mrs. Gifford, in full with interest. From this decree Mrs. Williams appealed.

[1] Counsel for appellant relies for reversal of this decree upon the law that "a transferor by delivery of a bill or note payable to bearer or endorsed in blank, being a mere conduit for the transfer of its legal title, incurs no liability." 8 Corpus Juris, 382, and that a deed of trust securing said note passes therewith to the transferee free from all equities. It will promote a clearer test of the application of the rules of law aforesaid to make a succinct statement of the latter principle of law, with the exceptions thereto, and the rule in Virginia as revealed by the decisions.

"That if a mortgage is given to secure a negotiable note and the note was transferred before maturity to a *bona fide* endorsee, such an endorsee takes the benefit of the mortgage as well as of the note, clear of any equities between the original parties." Daniel on Neg. Instr. sec. 834; *Carpenter* v. *Longan*, 16 Wall. 273, 21 L. Ed. 313; *Sawyer* v. *Prickett*, 19 Wall. 166, 22 L. Ed. 105.

This doctrine is denied in some of the States, on the ground that the mortgage or deed of trust is simply a *chose* in action, and while it is an incident to the debt and furnished the security, the benefit of which, so far as the assignor is concerned, passes with it, the assignee cannot rely on the privileged character of the note to insure him the advantage of the mortgage. *Towner* v. *McClelland*, 110 Ill. 549; *McIntire* v. *Yates*, 104 Ill. 497.

But the doctrine of these cases is held in Illinois not to apply to deeds of trust given to secure railroad coupon bonds intended to be thrown upon the market and circulated as commercial paper, and to be used as securities for permanent investments. *Peoria, etc.* v. *Thompson*, 103 Ill. 205.

A different rule applies to mortgages made to secure non-negotiable instruments. *Van Keuren* v. *Corkins*, 66 N. Y. 77, and a deed of trust stands on the same footing as a mortgage, and is an incident and accessory to the paper, the transfer of the latter carries with it to the transferees the benefit of the security. *New Orleans, etc.* v. *Montgomery*, 93 U. S. 16, 24 L. Ed. 346.

[2] It is conceded that in Virginia, as to common law securities, the law is that both deeds of trust and mortgages are regarded *in equity* as mere securities for the debt, and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it. *McClintic* v. *Wise's Admrs., et al.*, 25 Gratt. (66 Va.) 448, 18 Am. Rep. 694, and as to the assignees the maxim *prior in tempore portier in jure* must apply, and the assignee having the first assignment of the evidences of the debt must be paid first. *Gordon* v. *Fitzhugh, et al.*, 27 Gratt. (68 Va.) 835.

It is earnestly urged that to apply the rule prior in time is prior in right to negotiable paper secured by deed of trust and passed by mere delivery would make business almost impossible, and open wide the door to fraud and uncertainty. Consideration of the principles underlying these rules of law, and the distinctions made by different courts, reveals that their purpose is to give value and security to negotiable paper, and protect the public from the sale of worthless and fraudulent issues thereof. It is not necessary to the decision of this case, to decide whether the Virginia doctrine in reference to

assignments of evidences of debt secured by deed of trust fixes the right of the parties under the decree appealed from, but when such necessity arises the Virginia court will no doubt meet the situation of the conflict between common law securities and negotiable paper which passes by delivery with justice and regard to the soundest public policy.

[3-5] The fatal error in the position of the appellant is assuming she is entitled to the benefit of the rule of law merely by reason of the notes and deed of trust, and her counsel overlooks the well established rule of courts of equity in applying legal rules "that where equities are equal the law will prevail." In view of this equitable rule the clear burden was upon the appellant to show an equal equity with the appellee before she could take practically the entire residue of the proceeds of the sale of Plaza apartment, and Mrs. Gifford lose all but ten cents in the dollar of her note.

What are the equities of the appellant shown by the undisputed evidence in the case? Williams, Jr., was the master mind and actor in all of these transactions, and it is extremely doubtful whether his wife was cognizant of any part of them, and while her name was used he is really the conceiver of the scheme of floating $35,000.00 of worthless securities, and disposed of the only one to an innocent purchaser, and appears to be the chief beneficiary from the whole transaction. Be this as it may, she is responsible for all of his acts, and affected with all of his knowledge. The creator of an issue of negotiable notes with no value to them, and who puts them in circulation, thus to get something for nothing, does not come into court with clean hands, and will not be heard to invoke a rule of justice to protect him or his principal in his wrong doing. While he was shrewd enough to protect himself and wife from personal lia-

bility, he cannot, as the holder and transferrer of this paper, get back the property and keep Mrs. Gifford's money also.

Besides, the rule of law invoked relates only to *bona fide holders* of the notes, and while the notes were in possession of Williams, Jr., the executory contract of exchange has never been executed. The farm has never been conveyed, the note held by the bank and secured by deed of trust has never been paid, and its lien released, which was a condition precedent to be performed by Williams, Jr., or his wife. These facts and the fact that Williams, Jr., had recorded the deed and deed of trust and paid for it, and in addition had the apartment insured for nearly three times its value, demonstrates that said notes were never delivered except to be held perhaps in escrow until all parts of the contract of exchange had been completed. Hence the appellant is not the *bona fide* holder of the notes. Certainly conscience and fair dealing forbade the negotiation of these notes in the state of the transaction shown in the record. Daniel on Neg. Instr. sec. 854, etc.

The decision of the learned chancellor of the lower court is eminently just, right and in accord with the highest equitable principles and must be affirmed.

*Affirmed.*