# Richmond.

WAYNESBORO NATIONAL BANK, ET AL. V. MARY J. SMITH, EXECUTRIX AND W. O. FIFE.

November 15, 1928.

Absent, Chichester, J.

The opinion states the case.

*G. H. Branaman* and *C. G. Quesenbery*, for the appellants.

*S. B. Whitehead* and *Robert Whitehead*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal by Waynesboro National Bank and E. W. Barger from a decree of the Circuit Court of Nelson county, rendered June 18, 1927, in the chancery cause of *S. B. and Bobert Whitehead, trustees*

v. *E. L. Eakle*, Waynesboro National Bank, E. W
Barger, W. O. Fife, trustee, Mary J. Smith, in her
own right and as executrix of C. M. Smith, deceased,
and others.

The trustees filed their bill for the purpose of obtaining the aid of a court of equity in the execution of their
trust, and to ascertain the amounts and priorities of
the liens affecting the trust subject.   Mary J. Smith,
in her own right and as executrix, filed her answer,
alleging that in the year 1922, her husband, C. M.
Smith, loaned to E. L. Eakle and E. L. Matthews the
sum of $2,000.00, which was secured by the deed of
trust executed to S. B. and Robert Whitehead, trustees,
and that the same was the first lien upon the property
conveyed; that subsequently to the execution of the
trust deed C. W. Smith departed this life, having
made his last will and testament in which will she was
bequeathed the two bonds secured in the deed of trust.

The Waynesboro National Bank filed its answer to
the bill of complaint, setting forth that by purchase at a
judicial sale E. L. Eakle became the owner of the real
estate covered by the Whitehead deed of trust; that,
subsequent to this purchase, Eakle executed a deed
of trust to J. T. Coleman, trustee, conveying the land
in trust to secure an issue of $10,000.00 in bearer bonds,
in denominations of $2,000.00, payable in one, two,
three, four and five years after date, and bearing date
September, 1924; that two of said bonds were pledged
with respondent as collateral security to secure certain
indebtedness of Eakle's; that Eakle defaulted in the
payment of the indebtedness due respondent, and
thereupon respondent, pursuant to the contract of
pledge, offered the two bonds for sale and became the
purchaser for the sum of $1,840.00.   The answer
further alleges that the indebtedness asserted by Mrs.

Smith has been discharged and that respondent is entitled to a first lien on the trust property involved.

E. W. Barger, one of the appellants, filed his petition in the cause, alleging that he was the holder in due course of two bonds secured by the Coleman deed of trust, each for the sum of $2,000.00, and that he is entitled to share in the proceeds derived from the sale of the land as a first lienor and as a prior assignee to W. O. Fife, a holder of a $2,000.00 bond secured by the Coleman deed of trust.

Upon the hearing of the cause, the court decreed that the debt of Mrs. Smith had priority over all the other debts asserted, and also held that the bond held by W. O. Fife was assigned prior to the bonds held by E. W. Barger. From this decree an appeal was allowed.

The pertinent facts are: E. L. Eakle and E. L. Matthews owned two adjoining tracts of land in Nelson county, Virginia, containing in the aggregate some 1,026 acres. By deed dated February 27, 1922, they and their wives conveyed the lands to S. B. Whitehead and Robert Whitehead, trustees, to secure equally the payment of a debt of $6,000.00, evidenced by six bonds of even date, each for the sum of $1,000.00, two of the same being payable to C. M. Smith, one and two years after date, respectively, and the other four being payable to J. H. Wood, one, two, three and four years after date, respectively, said bonds having been executed by both Eakle and Matthews. There was nothing on the face of the bonds to show that they were secured by a deed of trust.

In the chancery cause of *E. L. Matthews* v. *Eakle*, the real estate was sold and purchased by Eakle, to whom it was conveyed by a commissioner of the court by

deed dated July 10, 1924, wherein Eakle expressly assumed the payment of the deed of trust of $6,000.00 and interest, which assumption was evidenced by his joinder in the deed.

By deed dated September 2, 1924, Eakle and wife conveyed the real estate to J. T. Coleman, Jr., trustee, to secure the payment of the five bonds of Eakle of even date therewith for the sum of $2,000.00 each and payable to bearer one, two, three, four and five years after date, respectively. These bonds came into the hands of different owners and holders; the bond payable one year after date was pledged by Eakle on September 4, 1924, as collateral security with the Basic City Bank (now the Citizens Bank of Waynesboro) for the payment of a debt, and the bond payable two years after date was pledged with the bank some time during the year 1926, as additional collateral security for the payment of the same debt secured by the one year bond. Default having been made in the payment of the debt, the bank sold the two pledged bonds at public auction on September 30, 1926. The two bonds payable three and four years after date were pledged with the Waynesboro National Bank, Incorporated, on October 1, 1924, as collateral security for the payment of certain debts, and default having been made in the payment of the debts, the bank sold the two bonds at public auction and itself became the purchaser thereof on September 25, 1926. The fifth bond was transferred by Eakle to W. O. Fife in the year 1926.

By deed dated February 16, 1925, recorded on March 4, 1925, Eakle and wife conveyed the said tracts of land to Eagle Mountain Orchard Corporation, a corporation practically owned by Eakle, in which conveyance the corporation assumed the payment of the

$6,000.00 deed of trust of February 27, 1922, to C. M. Smith and J. H. Wood.

During the latter part of the year 1924, C. M. Smith, the holder of two of the $1,000.00 bonds secured by the deed of trust of February 27, 1922, departed this life. By his will he left the bulk of his estate to his widow, Mary J. Smith, and she qualified as executrix of his will. After settling his debts and other bequests, she was entitled under the will to the residue of his estate, including the Eakle debt. Eakle was not advised of Smith's death, and on March 3, 1925, he mailed Smith a letter containing Eakle's check for $120.00 in payment of the interest due February 27, 1925, on the two bonds. The letter was directed to Lovingston, and was forwarded to Mrs. Smith at her Roanoke address. She received the letter with the check and in a letter to Eakle she acknowledged receipt of the same and advised him of her husband's death; that she was entitled to the debt, and asked him to make out a new note for the $2,000.00 in her name and that she would return the old note. After receiving this letter, Eakle executed his bond for the $2,000.00 and post-dated it as of February 27, 1925, payable to Mrs. Smith three years after date, and mailed it to her with the request that she return him the two $1,000.00 bonds. She returned the two bonds to him as requested. On June 18, 1925, Eakle wrote Mrs. Smith that he was "unable to find the note return, * * * being misplaced somehow," and asked her to write him if the same had really been sent to him, to which she promptly replied that she had returned the bonds.

Some time in the month of July, 1925, Eakle inquired of the clerk of Nelson county what had to be done in order to get the Whitehead deed of trust released, and he was advised by the clerk as to this. Later Eakle

consulted his attorney who prepared at his request the following affidavit:

"This day personally appeared before me, Paul B. Woodfin, a commissioner in chancery for the Corporation Court for the city of Roanoke, in the State of Virginia, Mrs. Mary J. Smith, executrix of the estate of the late C. H. Smith, who being duly sworn deposes and says as follows: That she is the widow of the said C. M. Smith, deceased, and by virtue of the last will and testament of C. M. Smith and as executrix she forwarded to E. L. Eakle, of Waynesboro, Virginia, on March 18, 1925, a certain bond for the sum of $2,000.00, which said bond had been satisfied by E. L. Eakle's having given to the said Mrs. Mary J. Smith other negotiable paper in the place and stead of said bond; and the said Mrs. Mary J. Smith does further make oath in her own right and as executrix that the said bond was issued February 27, 1922, and was secured by deed of trust on real estate in Nelson county, Virginia, in which said deed of trust S. B. Whitehead is named trustee, and the amount of real estate covered by said deed is 1,000 acres; and, further does the said Mrs. Mary J. Smith make oath that the said bond has been lost or misplaced so that E. L. Eakle is unable to present same to the clerk of the court in Nelson county for release of the lien and that the bond referred to was given to her late husband C. W. Smith and was payable February 27, 1924, and further this deponent sayeth naught.  Mrs. Mary J. Smith, executrix of C. W. Smith."

The affidavit was signed by Mrs. Smith and sent by the attorney to Blake, who presented the same to the clerk of the Circuit Court of Nelson county and asked him to release the deed of trust. The clerk advised him that the affidavit was not sufficient to authorize a

release of the deed of trust, and asked Eakle why Mrs. Smith was making the change, to which Eakle replied: "I told him that it was none of my business, and I did not presume it was any of his." The clerk refused to release the deed of trust, but did enter on the margin of the page of the deed book in which the deed of trust was recorded the substance of the affidavit.

The trustees in the first deed of trust having been requested to execute the same, and being advised of the attack that was being made on Mrs. Smith's lien, instituted a chancery suit, impleading the interested parties and asking for the advice and instruction of the court in the administration of the trust.

The petition for an appeal presents but two questions, namely: (1) Has there been a novation of the Mary J. Smith debt? (2) Has the second E. W. Barger bond priority of payment over the bond held by W. O. Fife?

Courts are ever reluctant to treat the execution and delivery of a new note in the stead and place of a note secured by a lien as a satisfaction of the debt. In the absence of convincing proof to the contrary, it has been repeatedly held by this court that the presumption is that the debt has not been extinguished, and the burden is upon him who relies upon a novation to show that the lien has been intentionally displaced. *Morris v. Harveys*, 75 Va. 732; Story Ep.; section 1224.

In *Fidelity Land & T. Co.* v. *Engleby*, 99 Va. 168, 37 S. E. 957, it is said: "Whether or not a debt has been novated is a question of fact, and depends entirely upon the intention of the parties to the particular transaction claimed to be a novation. In the absence of satisfactory proof to the contrary, the presumption is that the debt has not been extinguished by taking the new evidence of indebtedness; such new evidence, in the absence of intention, express or implied, being treated as a conditional payment merely."

In *Van Nostrand & Co.* v. *Virginia Zinc, etc., Co.*, 126 Va. 311, 101 S. E. 65, it is said: "A mortgage secures a debt, and not the note, or bond, or other evidence of it. No change in the form of the evidence, or the mode or time of payment—nothing short of *actual payment of the debt*, or an express release—will operate to discharge the mortgage. The mortgage remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note, or by giving a different instrument as evidence of the debt, or by a judgment at law on the note merging the original evidence of indebtedness, or by a recognizance of record taken in lieu of the mortgage note."

In 2 Minor's Inst. (2d ed.), 316, we read: "As long as the debt remains, however changed may be the security (as in case of negotiable notes secured by mortgage, and renewed from time to time), the mortgage continues to subsist."

Especially is this true where in treating the new note as a satisfaction of the debt, the effect will be to deprive the creditor of a subsisting lien. Application of this principle has resulted in confusion where there has been a failure to draw the distinction between a case where there is only a personal liability and a case where the creditor holds not only the personal obligation of the debtor, but also holds a lien as collateral security for the payment of the debt. In the first case above mentioned, if there be default in the payment of the obligation the creditor must resort to his legal remedy. In the latter case the creditor has the option of either suing upon the obligation, foreclosing pursuant to the terms of the instrument securing the lien, or pursuing both remedies concurrently until the debt is fully satisfied.

The burden was upon appellants to show that in accepting the new notes from Eakle, Mrs. Smith intended not only to release Eakle from his personal obligation, but to release as well her deed of trust lien. This burden they have attempted to carry by the introduction of the affidavit delivered by Mrs. Smith to Eakle. This affidavit, when read in connection with the correspondence between the parties and in view of the facts and circumstances surrounding the attempt of Eakle to have the deed of trust marked satisfied, falls short of the proof necessary to satisfactorily show that she intended to release the lien of the deed of trust.

When the affidavit which sought to account for the non-production of the old notes was presented to the clerk, whose duty it was to certify a release of the lien, Eakle was informed that the requirements of section 6456 of the Code had not been complied with. In answer to this proffered information, the clerk was informed by Eakle that the matter "was none of his business." Thereupon the clerk refused to certify that the deed of trust was released, but did record upon the margin of the deed book the substance of the Smith affidavit.

The fact that Eakle did not seek to have Mrs. Smith comply with the statute providing for the release of the deed of trust lien is a pregnant circumstance tending to show that Eakle did not consider that it was her intention to surrender her lien. Appellants cannot stand upon any higher plane than did Eakle. The law imposed upon them the duty of examining the record. Had they done so, it is obvious that they would have discovered that the statute had not been complied with. The certificate of the clerk fails to show that Mrs. Smith, either in person or by agent, or by attorney, had released the deed of trust.

■ In order to obtain a release under section 6455 of the Code, there must be a concurrence of two separate and distinct acts: (1) The lien creditor must cause the payment or satisfaction to be entered on the margin of the page of the book where the incumbrance is recorded, which entry of payment or satisfaction "shall be signed by the creditor or his duly authorized agent, attorney or attorney in fact;" and (2) "the note, bond or other evidence of debt secured by such lien, duly cancelled, shall be produced before the clerk in whose office such incumbrance is recorded, or an affidavit shall be filed by the creditor, or his duly authorized agent or attorney, or attorney in fact, with such clerk, to the effect that the debt therein secured and intended to be released or discharged has been paid to such creditor, his agent, attorney, or attorney in fact, who was, when the debt was so satisfied, entitled and authorized to receive the same," and (a) "that such note, bond or other evidence of debt has been cancelled and delivered to the person by whom it was paid," or (b) "has been lost or destroyed and cannot be produced." The statute further provides: "And when so signed and the signature thereto attested by said clerk, with a certificate that said note, bond or other evidence of debt duly cancelled was produced before said clerk, or that the affidavit hereinbefore required has been duly filed with such clerk, the same shall operate as a release of the encumbrance as to which such payment or satisfaction is entered."

■■ The question whether or not the parties intended that the new notes should satisfy the debt, was one of fact. The evidence upon this question is conflicting. The trial court has resolved the conflict in favor of the appellee and under well recognized rules the decision of the trial court is entitled to great weight. There is no merit in the first assignment of error.

■ We are of opinion that the second assignment of error is well founded. It appears from the proof that the two bonds now held by appellant, E. W. Barger, were pledged by Eakle to the Citizens Bank of Waynesboro as security for a loan, September 4, 1924, and February 15, 1926, respectfully. Upon default in the payment of the principal debt, these two bonds were sold at public outcry, and E. W. Barger became the purchaser thereof.

The report of the master commissioner, which was confirmed by the court, shows that the bond held by W. O. Fife was delivered to him by Eakle on March 1, 1926. Barger, as a purchaser in due course of the bonds pledged by Eakle to the bank, became invested with all the rights to which the bank was entitled under its collateral agreement with Eakle.

■ In *Williams* v. *Gifford*, 139 Va. 779, 124 S. E. 403, it is said: "As to the assignee, the maxim, *prior in tempore portier in jure*, must apply and the assignee having the first assignment of the evidence of the debt must be first paid."

The lower court having erred in decreeing that the bond held by W. O. Fife was prior in time of payment to the second year $2,000 bond held by E. W. Barger, the decree to that extent will be reversed and anulled; in all other respects, the decree complained of will be affirmed.

*Affirmed in part; reversed in part.*