FRANK M. BRAND, *Admr., etc. v.* JAMES M. GIBSON, *Trustee, et al.*

(No. 7879)

Submitted October 2, 1934. Decided October 9, 1934.

*Creed S. Simons* and *Millard F. Snider,* for appellants.
*Frank M. Brand,* for appellees.

KENNA, JUDGE:

On January 24, 1933, Frank M. Brand, administrator of Abigail Gibson, deceased, and Scott Gibson filed their bill of complaint in the circuit court of Preston County seeking to enjoin sale under a deed of trust dated the 31st day of July, 1911, securing a note for $550.00, payable to A. L. Gibson (now owned by Hugh B. Gibson) signed by Abigail Gibson, Scott Gibson, Mollie Reynolds, J. T. Reynolds, Dessie Gibson, Laura Morgan and L. W. Morgan. The prayer of the bill is that the interests conveyed by the deed of trust may be ascertained; that the status of the title to the real estate therein conveyed may be fixed; that the correct amount that may be due to the said Hugh B. Gibson under the deed of trust may be determined; that the liens upon the lands conveyed in the deed of trust may be fixed in proper priority, etc. The injunction was granted, the cause referred to a commissioner in chancery, report made and exceptions thereon argued, and a decree of sale entered on the 27th day of November, 1933. It is from that decree that this appeal is prosecuted.

There are but two questions of error assigned and briefed.

The first question arises from the fact that in the decree of sale, the trial chancellor, over the objection of Hugh B. Gibson, made in timely form by his exceptions to the report of the commissioner in chancery, decreed that the

principal plus straight interest was the amount of Hugh B. Gibson's recovery on the note for $550.00 dated July 31, 1911. Testimony taken by the commissioner showed that this note had been renewed on a yearly basis until the last renewal, dated August 31, 1929. The debt on that date amounted to the sum of $1578.65, for the reason that on the occasion of each renewal the earned interest that was due and payable had been capitalized and carried into the amount of the note. No interest or other payments had been made on the note. The renewals were simply prepared and sent to Scott Gibson, who sent them to the other makers to be signed and returned to the payee. There is testimony that on the occasion of one of these renewals, Scott Gibson's attention was called to the fact that it included the accrued interest. This he admits, but states that he did not realize throughout the years that interest was, as he expressed it, being compounded and added into the face of the note. He does not explain in what manner he believed the interest that became due from year to year was provided for. The defendants in error urge that inasmuch as there was, on the occasion of each renewal and after the yearly instatement of interest was earned, no express understanding with the makers that the interest should be added into the face of the note that it cannot be added. This is doubtless true under our West Virginia cases, and this, doubtless, is the legal principle that the learned trial chancellor applied in reaching his conclusion. We think, however, that the proof in this case shows distinctly that there was an agreement to capitalize the interest and carry it yearly into the amount of the note, and that this agreement was made after the yearly interest had become due. We think that throughout the years this annual agreement is unmistakably evidenced by the renewal notes themselves. They were increasing in amount from year to year, and this increase all along, with the exception of a negligible difference of some ninety odd cents, amounted to exactly the amount of the interest and principal with the interest capitalized annually. If it was the intention of the makers that the interest on the

original note of $550.00 should run straight until the note was paid, then why the renewal notes at all? They were made annually. Hence, we cannot infer that their purpose was to avoid the running of the statute of limitations. We think the inescapable conclusion is that when the interest was due, in order to procure a forbearance from the payee, the makers agreed to capitalize it and to add it to the amount of each renewed note. We believe that the case of *Barbour* v. *Tompkins,* 31 W. Va. 410, 420, 7 S. E. 1, is ample authority for sustaining this sort of transaction as between the parties. As to subsequent creditors or purchasers, there is no question raised upon this record. The fact that in the case cited, separate interest notes were executed instead of carrying the amount of the interest into the principal of the renewal notes, we think does not alter the application of the principle. We believe that the principle enunciated is applicable here and conforms to the great weight of authority. 15 R. C. L. 837. The fact that the form of the evidence of the indebtedness secured by the deed of trust was altered from time to time in no way changes the fact that the debt is secured by the trust deed. *Stimpson* v. *Bishop et al.,* 82 Va. 190, 198; *Karn* v. *Blackford,* 1 Va. Dec. 841, 846; *Van Nostrand & Co.* v. *Virginia Zinc & Chemical Corporation, Ltd.,* 126 Va. 131, 101 S. E. 65; *Artrip* v. *Roanoke & Son,* 96 Va. 277, 31 S. E. 4.

The other assignment that is briefed is the question of whether, in this proceeding, a personal decree can be rendered against Scott Gibson, one of the plaintiffs, upon the note in question. In an answer filed by Hugh B. Gibson after the incoming of the commissioner's report, he expressly prays for a personal decree against the makers of the note dated August 31, 1929, for the face of that note and interest. No process was taken upon this answer. The question, therefore, is raised whether we can view it as a cross-bill. The universal rule, firmly fixed in West Virginia, is to the effect that as to co-defendants there must be process on a cross-bill or upon an answer in the nature of a cross-bill. In the case of *Goff* v. *Price,* 42 W. Va. 384, 26 S. E. 287, it is quite forcibly

argued by way of dicta that as to a plaintiff in the original bill in equity, there need be no process on the incoming of a cross-bill or answer in the nature of a cross-bill. On the basis of this case, and of several other West Virginia cases in which like comment occurs, the annotators and text-writers have classified West Virginia as a state not requiring process against the plaintiff in the original bill when a cross-bill or answer in the nature of a cross-bill comes in. We do not believe that this has ever been squarely decided in West Virginia, and our research forces us to conclude that it is not in conformity with the weight of authority. Conceding the plausibility of the dicta in the *Goff* case to the effect that a plaintiff in a court of equity comes there voluntarily, demanding answers from the defendants, and for that reason he must be prepared at all times to meet their pleadings, even those seeking affirmative relief upon new matter, we believe that the contrary of this position to the effect that the plaintiff comes into court demanding *only* the answer to his bill of complaint, and perhaps not expecting a counter suit against him, is equally plausible. Certainly the better practice upon the incoming of a pleading alleging new matter and seeking new relief is to require that every other party to the cause be put upon adequate notice before the trend of that cause can be reshaped. We do not believe, however, that this question is before us for decision, and we refer to it only for the purpose of pointing out that West Virginia in fact is not committed to the proposition that process is unnecessary as against a plaintiff in the original bill upon the incoming of cross-bill or an answer in the nature of a cross-bill. The West Virginia cases and others that have been of interest on this question are the following: *Goff* v. *Price,* 42 W. Va. 384, 26 S. E. 287; *Martin* v. *Kester,* 46 W. Va. 438, 33 S. E. 238; *Grobe* v. *Roup,* 46 W. Va. 488, 33 S. E. 261; *Farmer's State Bank* v. *Kirkland,* 200 Ala. 146, 75 So. 894; *Treiber* v. *Shafer,* 18 Iowa 29; *Anderson* v. *Ward,* (Ky.) 6 T. B. Mon. 419; *Pillow* v. *Sentelle,* 49 Ark. 430, 5 S. W. 783; *Revier* v. *Kahn,* 111 Ind. 200, 12 N. E. 169. Here, we are of opinion that the bill

of complaint itself is a sufficient foundation for the relief asked. As one of the plaintiffs, Scott Gibson has set up the deed of trust debt in his bill of complaint and has prayed, among other things, that the amount due thereunder be ascertained. He seeks clarification, the fixing of liens and their priorities, the adjudication of the interests covered by the deed of trust, and a settlement of the status of the title to the property conveyed therein. It seems to us that under the broad scope of the bill of complaint, its plain purpose is to seek the doing of whatever need be done between the parties to set the transaction straight and wind it up. It invites the exercise of the full powers of the court in chancery in the premises and the plaintiff cannot complain when those powers are exercised. *Farmer's State Bank* v. *Kirkland and Brackin*, .75 So. (Ala.) 894. The holder of the deed of trust note would be entitled to sue at law thereon and, indeed, might do so before foreclosure without affecting his lien. *Waynesboro National Bank* v. *Smith,* 151 Va. 481, 145 S. E. 302; *Gibson* v. *Green's Adm'r.,* 89 Va. 524, 16 S. E. 661. If that be so, and if he came into a court of equity under a bill filed for the purpose of clearing up the transaction, does it not necessarily follow that such a court under such a bill, following the time-honored principles of equity jurisdiction, could, within the scope of the proceeding, grant such relief as might be necessary to prevent circuity of action? We believe that this is clearly so, and that Hugh B. Gibson is entitled to have a decretal judgment against Scott Gibson for the amount of the note dated August 31, 1929, with proper interest. As to the question of a personal decree against the other makers of the note, there is considerable confusion in this record. But since no point is made of the failure of the trial chancellor to enter such decree against the makers of the note with the exception of Scott Gibson, we do not pass upon the matter of a personal decree against any other than he.

We are of opinion, therefore, that the deed of trust, dated July 31, 1911, as between the parties, secures the renewal note dated August 31, 1929, in the amount of

$1578.65, and that that note, with interest from its date, is a valid claim against the makers thereof. And, further, that the trial chancellor should enter a personal decretal judgment against Scott Gibson in the amount so ascertained. Since there is no question raised in the record about the responsibility of Abigail Gibson and Dessie Gibson, and no complaint of the trial chancellor's decree as to them and their estates, we do not pass upon any of the questions that might be there involved.

For the reasons stated, the decree of the circuit court of Preston County is reversed and the cause remanded for further proceedings in accord with this opinion.

*Reversed and remanded.*