# Richmond

## S. M. REW v. CHARLES H. BLOXOM AND OTHERS.

January 18, 1943.

Record No. 2593.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*H. Ames Drummond* and *C. Lester Drummond*, for the appellant.

*Stewart K. Powell* and *R. Norman Mason*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

Charles H. Bloxom applied to Elmer W. Somers, an attorney, for a loan of $2,530 with which to complete the construction of a home at Willis Wharf in Northampton county. As security for this loan, he offered the lot on which the building was being erected and one acre of land on which there was a small residence. Somers obtained $1,300 from S. M. Rew, $1,000 from Miss Sue Jones and $230 from the estate of Birch Minors, for whom he was guardian. On August 11, 1924, Bloxom and wife conveyed

the two parcels of land, together with the improvements thereon, to Somers, as trustee, to secure the payment of the obligations which were described in the deed of trust as follows: ·

"1st.   To secure the Peoples Bank of Bloxom, Inc., in the payment of one negotiable *promisory* note of even date herewith for the sum of $1,300.00 payable on demand, with interest from date;" (This note was contemporaneously assigned without recourse to S. M. Rew.)

"2nd.   To secure Sue Jones or her assigns, in the payment of one negotiable *promisory* note of even date herewith for the sum of $1,000.00, payable on demand, and with interest from date, and

"3rd.   To secure Peoples Bank of Bloxom, Inc., or its assigns, payment of one negotiable *promisory* note for the sum of $230.00, payable on demand and with interest from date, (This note was assigned without recourse to the estate of Birch Minors.)—all of said notes being executed by the said parties of the first part.   This makes a total of $2,530.00, secured by this deed of trust."

On April 2, 1932, the trustee advertised the property for sale because default had been made in the payment of interest.   At this sale the two parcels of land were cried out to Mrs. Margaret M. Somers, the wife of the trustee, for $400 and $1,500 respectively.   Mrs. Somers paid no part of the purchase price.   Later, Somers, claiming to be acting as agent for the beneficiaries, sold the one-acre lot to George L. Taylor for $550.   He rented the other house and lot, collected the rents, made repairs and paid the taxes.   He paid S. M. Rew $78 annual interest on his $1,300 loan from 1932 to 1939, inclusive.   He paid Miss Jones only a part of the annual interest due her.   Shortly after the date of sale, Somers filed in the clerk's office of the Circuit Court of Northampton county an inventory and account of sale. He never executed a deed to his wife, but he, as trustee, joined in the conveyance of the one acre to Taylor.

The trustee made no report to the commissioner of accounts of his disbursement of the proceeds of the sale, nor

did he make any settlement with the beneficiaries in the deed of trust. However, on July 3, 1941, in response to a demand from the attorney of S. M. Rew, he gave a statement showing the $550 collected from George L. Taylor, the amount of interest and rents collected, all totaling $1,289, and how and to whom he had disbursed this sum.

Soon after S. M. Rew's demand for a settlement, the trustee advertised the remaining lot for sale under the deed of August 11, 1924. Thereupon, S. M. Rew instituted this suit, praying (1) that the trustee be enjoined from making the sale, (2) that Mrs. Somers be compelled to pay the full amount of her purchase price or else the property be sold at her risk, and (3) that the obligation held by S. M. Rew be declared a prior lien over other obligations named in the deed of trust.

It seems that, before the injunction was actually issued, the trustee agreed to abandon the sale of the property as advertised. The trustee, Miss Jones and the guardian for Birch Minors' estate filed separate answers to the bill. The issues raised by the pleadings were referred to a commissioner in chancery, whose report was adverse to the contention of S. M. Rew. This report was confirmed by the chancellor and the case dismissed. From a decree so holding, Rew obtained this appeal.

The first question presented is whether Rew, as the holder of the obligation described in the paragraph designated "1st" in the deed of trust, is entitled to preference or priority over the holders of the other obligations in the proceeds of sale of the property conveyed in trust.

While the notes designated "1st" and "3rd" in the deed of trust are made payable to the Peoples Bank of Bloxom, Inc., this bank never acquired any interest in either of them. It contemporaneously assigned the notes without recourse to the present owners. Hence, the facts present no question of the order of assignment, as was the case in *Waynesboro Nat. Bank* v. *Smith*, 151 Va. 481, 145 S. E. 302; *First State Bank* v. *Kincaid*, 151 Va. 101, 144 S. E. 453; and *Williams* v. *Gifford*, 139 Va. 779, 124 S. E. 403.

It is conceded that the notes were made payable to this bank to avoid listing them for taxation, which attempted tax evasion should be called to the attention of the department of taxation and the attempt frustrated, as far as is now legally possible, before any of the proceeds of the sale of the property are paid to them.

The only ground on which the appellant contends that he is entitled to a preference is that the deed of trust uses the abbreviations "1st," "2nd" and "3rd" as a part of the description of the three debts secured. No authority is cited for this contention. The listing and consecutive numbering of these paragraphs and the notes seem to be merely for the purpose of identification rather than an intention to prefer one creditor over the other.

Bloxom applied to Somers for the loan of a specific sum; i. e., $2,530, for a certain, definite purpose. No one of the lenders then had the desired amount to invest. Hence, it was necessary for Somers to obtain a part of the total sum from each of the three parties. None of the beneficiaries made any investigation as to the value of the property offered as security, nor did any of them examine the form of the instrument securing the payment. These details were left to the discretion of their investing agent. While Rew and Miss Jones may not have known the details of the transaction, these details were known to Somers. Knowledge of the agent is implied to the principal.

The notes bear the same date and mature at the same time. It is stated in the deed of trust that the sum of the three loans "makes a total of $2,530.00, secured by this deed of trust." It is stated in another paragraph of the deed of trust that if default be made in the payment of interest, then the trustee is authorized to sell the property, and "the proceeds of sale shall be applied to defraying the expenses of this trust * * *, (and to) the amount of money then payable on the *aforesaid notes* and the residue shall be paid over to the said Charles H. Bloxom." (Italics supplied.)

The circumstances under which the debtor acquired the money and the recitals in the deed negative any purpose

or intent to create a priority in the payment of the obligations secured. There was no reason for preference to be given one beneficiary over another, and no such preference was expressed. The equities of each of the creditors secured are equal. There is no preference or priority among them. See *Davis* v. *Roller,* 106 Va. 46, 55 S. E. 4, 117 Am. St. Rep. 977; and 4 Pomeroy's Equity Jur. (5 ed.), sections 1200, 1201.

The other question presented is whether Mrs. Somers became the purchaser of the property in her own right when it was cried out to her on April 2, 1932.

The pertinent evidence on this point is in conflict as between Rew and the trustee. Somers and John Seabreeze testified that on the day of sale Seabreeze bid on the property for Mrs. Somers, and that, when the auctioneer cried it out to her, it was stated that she bought it for the benefit of the beneficiaries in the deed of trust. Somers further testified that he reported the facts to S. M. Rew, who authorized him to assume the control and management of the property for the best interests of the secured creditors. Rew denied this, but others testified that he told them Somers was looking after some property at Willis Wharf for him. On cross-examination, Rew conceded that Somers had been his agent to look after these matters for him until six or eight months prior to the time he testified.

On this conflict in evidence, the commissioner found that Rew had authorized and ratified the acts of Somers in buying the property in Mrs. Somers' name for his benefit and the benefit of the other secured creditors and managing it as their business agent since April 2, 1932.

The evidence does not disclose the value of the house and lot remaining unsold. The trustee's account shows that, since April 2, 1932, he has collected interest and rents totaling $749, plus a profit of $150 on the sale of the house to Taylor, to all of which Mrs. Somers would be entitled if she were forced to take the property as of April 2, 1932. Hence, it is impossible to ascertain from this record whether the beneficiaries would gain or lose if Mrs. Somers were

compelled to buy the property and pay interest on the purchase price.

The evidence is insufficient to show that either Miss Jones or Birch Minors' estate is bound by the action of Somers in buying the property and managing it for a period of ten years. However, Miss Jones and Birch Minors' estate were represented by able and experienced attorneys and neither sought affirmative relief in the court below. They made no exceptions to the disbursements made by the trustee or to the report of the commissioner, which was affirmed by the chancellor. They pray that this court affirm the decree of the trial court.

■ In view of the finding of the commissioner and the decree of the trial court, the evidence is sufficient to establish the fact that Rew knew the property was cried out to Mrs. Somers for the benefit of the creditors, or that he ratified the acts of Somers in managing the property as his agent and is bound by that ratification.

Under the circumstances, we must affirm the decree of the lower court. However, this suit should be retained on the docket of the trial court, and the property sold and disbursements made under its supervision. The decree of the trial court will be modified to that extent. As so modified, it will be affirmed.

*Modified and affirmed.*