# Richmond.

NEWBERRY v. RUFFIN AND OTHERS.

NOVEMBER 19, 1903.

Absent, Whittle, J.

1. DISMISSAL "WITHOUT PREJUDICE."—A dismissal of a suit "without prejudice" is no decision of the controversy on its merits, but leaves the whole subject of litigation as much open to another suit as if no suit had ever been brought.

2. CONTRACT FOR SALE OF LAND—*Failure of Title—Remedies of Purchaser.*—Upon a failure of title to real estate contracted to be sold, the purchaser may abandon possession of the premises, and, when sued for the purchase price, set up the want of title in the vendor as a defence, or, if he has paid a part or all of the purchase price, may sue at law to recover it back, having in the meantime abandoned the premises or restored them to the vendor, or he may file his bill in equity, praying that the contract be in terms rescinded. If none of these modes of redress are satisfactory in the particular case, the purchaser may elect to affirm the contract and maintain his action to recover damages for breach of the vendor's express or implied contract to convey a good title.

3. CONTRACT FOR SALE OF LAND—*Defective Title—Affirmance—Action for Damages—Allegation and Proof of Performance of Covenants by Vendee—Case in Judgment.*—If the purchaser of real estate, the title to which he alleges to be defective, elects to affirm the contract and sue for damages, he must aver and prove a performance of all the covenants binding upon him, or tender of performance, or facts sufficient to excuse such performance or tender. In the case in judgment, if it be admitted that such performance is sufficiently averred in the declaration, the evidence falls short of establishing it. Here the vendor contracted to sell to the vendees an undivided three-fourths interest in a tract of land and to take

his remaining one-fourth in the stock of a company to be organized to purchase the land from them, and to aid the vendees in the formation of a land and improvement company for the development of the land. The vendor had marketable title to thirty-nine-fortieths of the tract, and did aid in the organization of the company. He tendered the vendees a deed, with general warranty, for the undivided three-fourths. The vendees paid the cash payment, obtained a charter for the company, but failed to give their note according to the contract for the deferred payments, or to pay or tender the purchase money, or to demand such a deed as they were entitled to, and were unable to get the minimum capital of the company subscribed. They tendered to the vendor for his signature a deed conveying to the company the whole tract, stating the consideration at three times the amount called for by the contract. This deed the vendor declined to sign. The vendees sued to recover the cash payment made by them.

*Held*:

There can be no recovery. The vendor did not stipulate for the notes of the company for the deferred payments, but for the notes of the vendees themselves. The vendees having failed to pay or tender the purchase money, or to execute and deliver, or to offer to execute and deliver their notes as they contracted to do, and having failed to demand such a deed as they were entitled to under the contract, cannot maintain this action to recover back the cash payment.

Error to a judgment of the Circuit Court of Bland county, rendered May 21, 1902, in an action of covenant, wherein sundry parties suing on behalf of Ruffin and others, defendants in error, were the plaintiffs, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*J. H. Fulton, S. W. Williams* and *James H. Gilmore,* for the plaintiff in error.

*Berkeley & Harrison* and *Henry & Graham,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

Opinion.

On the 2d of April, 1890, Harman Newberry entered into the following contract with Ruffin and others:

"I hereby agree to sell, and do sell, with general warranty of title, to said parties three-fourths (3-4) interest in seven hundred (700) acres of the 706 acres of land in my Kent's Mill farm, in Wythe county, Va., the six acres reserved out of the 706 acres being those on which the dwelling house is located, which shall be laid off compactly with some frontage on the N. & W. R. R., for and at the price of one hundred dollars per acre; $52,500 for the whole three-fourths interest. I also agree to unite with the above-mentioned parties in the formation of a land and improvement company for the development of the said farm, by laying off the said land into town lots and selling the same, and to take my one-fourth interest reserved above in stock of said company in like manner and kind as shall be issued to the aforesaid parties. The terms of payment shall be ten thousand dollars cash upon tender of proper deed; ten thousand dollars ($10,000) in three months thereafter; seventy-five hundred ($7,500) each in six, nine and twelve, months thereafter, and ten thousand dollars ($10,000), being the remainder, in fifteen months from the date of the first payment. The deferred payments to bear six *per cent.* interest, evidenced by negotiable notes and secured by deed of trust upon the property conveyed. I also hereby and herein agree to furnish plot showing exact quantity and boundaries of land sold. This property is sold with the understanding that the land company to be formed shall agree and bind themselves to contribute one-half the cost of a railroad survey from the mouth of Reed Creek, or some other point on New River to or near Stuart, Va., whenever citizens of Southwest Virginia or elsewhere shall contribute the other half. The whole cost of said survey not to exceed five thousand dollars ($5,000).

"Witness my hand and seal.

"H. NEWBERRY.   [Seal.]

"On behalf of the aforesaid named purchasers, and as a committee to purchase said property, I hereby agree to above contract and accept same.

"J. F. RISON."

On the 8th of April, 1890, the vendees paid the first instalment of $10,000, though no proper deed had been tendered, and, disagreement having arisen between the parties as to their respective duties and obligations, refused to proceed further, and Newberry filed a bill in the Circuit Court of Wythe county, asking a specific execution of the contract. In this suit such proceedings were had that this court entered a decree denying specific execution of the contract asked for by Newberry, and refusing to rescind it in accordance with the prayer of the vendees, and dismissing the bill "without prejudice to the right of either party to bring his action at law for such damages as he may be advised he has sustained in the premises; that is, the parties will be left to seek their remedy in a court of law." *Rison* v. *Newberry,* 90 Va., at page 522, 18 S. E. 919.

"A dismissal of a suit 'without prejudice' is no decision of a controversy on its merits, and leaves the whole subject of litigation as much open to another suit as if no suit had ever been brought." This statement of the law is found in *Mathews* v. *Glenn,* 100 Va. 352, 41 S. E. 735, and is sustained, if it needs authority in support of it, by *Ragsdale* v. *R. R. Co.,* 62 Miss., at page 487, and *Mobile County* v. *Kimball,* 102 U. S. 691, 26 L. Ed. 238.

The case before us is therefore to be heard as though the suit of *Rison* v. *Newberry and Others* had never been decided. All the issues between the parties growing out of their contract are open for adjudication.

The Newberry Land Company was organized in order to carry into effect the objects contemplated in the contract which is the subject of this suit, and after the decision in *Rison* v.

*Newberry, supra,* it demanded of Newberry the repayment to it of the $10,000 which he had received under the contract. This court entered a final judgment in that suit, in which it held that, where the consideration of a contract for the sale and conveyance of land has wholly failed, *assumpsit* is the appropriate action to recover back money paid under the contract, although it be under seal, and, further, that a corporation cannot sue to recover money paid by others upon a contract, the consideration whereof has wholly failed, where it appears that at the time of the contract the corporation was not in existence, the money was not paid by or for it or for any of its liabilities, and the contract was not made for its benefit, but wholly for the benefit of the parties to the contract, and there has been no subsequent assignment to it, or acceptance by it, of the benefits of the contract. *Newberry* v. *Newberry,* 95 Va. 111, 27 S. E. 897. The court, in other words, held in that case that the proper action had been brought to recover back the consideration of the contract for the sale and conveyance of land, which had wholly failed, but that it had been brought by an improper party, and therefore there could be no recovery in that suit.

The same land company brought its action of covenant against Newberry, but it failed in that case because one not a party to a deed *inter partes* and not named nor definitely pointed out in it as the beneficiary, cannot sue thereon, either at common law or under section 2415 of the Code of Virginia of 1887. *Newberry Land Co.* v. *Newberry,* 95 Va. 119, 27 S. E. 899.

The object in both of these suits was to recover the cash payment of $10,000, and, having failed in each of them, the vendees, Ruffin and others, in March, 1899, instituted their action of covenant against Newberry. In the original declaration there were two counts, but upon demurrer the second count was stricken out, and Newberry pleaded covenants performed, covenants not broken, and special pleas.

A purchaser who buys real property, the title to which is bad, may choose between a variety of remedies for his relief, and by the remedy chosen he elects to affirm or disaffirm the contract. A court of law, indeed, cannot rescind the contract, but the vendee may abandon the possession of the premises, and set up the want of title as a defence when sued for the purchase money; or, if he has paid a part or the whole of the purchase money, he may sue in a court of law to recover it back, having in the meanwhile abandoned the premises, or restored them to the vendor; or he may file his bill in equity on failure of the title, praying that the contract be in terms rescinded.

The latter remedy was resorted to by the purchaser by way of defence in the original case of *Rison* v. *Newberry, supra.* Resort was had to the action in *assumpsit* for the recovery of the purchase money in *Newberry Land Co.* v. *Newberry, supra,* where a recovery was denied because the right of action was not in the party who brought the suit. If none of these modes of redress are satisfactory in the particular case, the vendee may elect to affirm the contract and maintain his action to recover damages for a breach of vendor's expressed or implied contract to convey a good title. These propositions are clearly stated in Maupin on Marketable Titles to Real Estate, at page 3, and are so reasonable that we do not feel it necessary to adduce any additional authority in their support.

The plaintiffs have elected to affirm the contract, for breach of which they sue, and it is therefore incumbent upon them to aver and prove a performance of all the covenants binding upon them, or tender of performance, or facts sufficient to excuse them for failure to perform or tender performance.

In 2 Minor's Institutes (4th Ed.), at page 864, it is said: "The purchaser can maintain no action at law, any more than the vendor, unless he can show that he has performed on his side every condition precedent stipulated for in the contract; and it will be remembered that in the case of mutual and

dependent covenants they are looked upon as respectively conditions precedent, so that, if the title is to be conveyed, and the purchase money paid at the same time, as the vendor cannot, on his side, as we have seen, recover the purchase money without showing that he was at that time able and offered to convey a good title, so the purchaser cannot recover unless on his side he is able to show a payment or tender of the purchase money at that time (unless he has been discharged from so doing by the vendor), and also a demand duly made of a conveyance, with an allowance of a sufficient time afterwards to prepare it."

The declaration avers that the plaintiffs "were at all times ready, able, willing and anxious to perform the promises and covenants of said contract in writing which were incumbent on them to perform, and which they agreed to perform, and that they did well and truly perform all such promises and covenants in said contract in writing incumbent on them to perform and which they agreed to perform."

Granting that this covenant belongs to the class which is so definite and certain in form "that it need not be made more certain for the purposes of pleading," and that in such cases it is sufficient to say generally "that the party has performed it according to the intent and meaning of the agreement" (3 Robinson's New Practice, 578; *Glover* v. *Tuck,* 24 Wend., at page 162; *Roach* v. *Dickinsons,* 9 Gratt. 154), the averment in this form does not obviate the necessity for proof of the performance at the trial. We shall therefore pass from the question of pleading to a consideration of the case upon its merits.

The contract between the parties has been set out in full. It is dated the 2d of April, 1890. On the 8th day of that month, without waiting for Newberry to make the deed with general warranty conveying a marketable title, as he was required by the contract to do, the plaintiffs paid to him $10,000. On the 26th of April a petition was presented to the judge of the Corporation Court of Danville asking that the Newberry

Land Company be chartered, and authority given it to do a great variety of things set forth at large in the petition. A charter was granted in accordance with this petition, in which it was provided that the capital stock was not to be less than $200,000 nor more than $500,000, to be divided into shares of $100 each. Newberry was one of the corporators, and was named as one of the directors.

The Newberry Land Company, immediately after the charter was granted, issued its prospectus, in which it is stated, among other things, that the charter of the company is a liberal one, authorizing it to "acquire lands, to lay off town sites, and to buy and sell real estate, to organize and conduct manufacturing enterprises, and generally granting all powers usually conferred on land and improvement companies." An attractive description is given of the 700 acres of land embraced in the contract, and of the great advantages it offers as a site for the establishment of furnaces and ironworks. It is stated that the survey of the Virginia and Kentucky railroad is about completed, and that it will soon be constructed. The building of this road is declared to be assured because of the necessity for giving an outlet to the markets of the world for the immense deposits of iron and coal in that vicinity. The capital stock of the company, it is stated, will be $300,000, of which $210,000 will be used in the purchase of land and $90,000 retained in the treasury for the purpose of development.

Counsel for Newberry promptly prepared an abstract of title, which was submitted to the vendees, who, on the 26th of June, 1890, prepared a deed to be executed by Newberry to the Newberry Land and Improvement Company, in which the consideration is stated to be $210,000. On the 27th of June, 1890, counsel for Newberry replies to the letter inclosing the deed. This letter relates to some question that has been raised about the quantity of land in the tract, and it was agreed that if, upon the survey which was then being made, the land should overrun

or fall short, compensation was to be made by the vendor or purchasers at the rate of $100 per acre. On the 3d of July counsel for Newberry writes a letter with respect to the terms of the deed itself. "For what reason," he inquires, "do you want the consideration to Newberry to be $210,000, instead of $70,000? I read the deed over to him yesterday, and he does not understand it. The original contract handed to me expresses the terms of the sale, and why not adhere to that? We have nothing to do with the subsequent stocking of the company at $300,000.

"To avoid two deeds, the deed from Newberry can recite the original consideration and then recite the subsequent sale and direction to make deed to the new company; at all events, I think the latter is the proper way for the deed to be made, and hope you will agree with me or suggest something that does not make a recital in the deed which is not correct.

"I am anxious to follow the track of the contract of sale as nearly as may be, and to prevent further complications think it best to do so."

To this letter plaintiffs, by counsel, replied on the 18th of July, 1890, as follows: "The Newberry land was bought first by some parties here, and before deed was made or asked for, the same land, along with the fourth retained by Newberry himself, was sold to the Newberry Company at the price of $210,000. By making the deed direct from Newberry to the company we can save considerable costs in the matter of tax on recordation, and as Newberry himself owns one-fourth of the stock of the company, it is smart saving to him.

"Then again, we do not think it wise to put on record our deed showing the price of the property to be $70,000, and immediately another deed showing that the first purchasers had sold to the company at $210,000; and in this protection of the secrets of our business Mr. Newberry is more interested than any other one man."

During this time efforts were being made to float the New-berry Land Company, but it appears that only about $75,000 of the stock was ever subscribed for, while the minimum upon which it was authorized to organize was by the terms of its charter $200,000. Of the stock subscribed, it appears that about $12,000 was paid into the treasury of the company. In the meantime the surveying and platting of the land was progress-ing. The officers and agents of the company were given free access to the land purchased of Newberry. He became a sub-scriber to the stock of the company. He was named as one of its directors, and the evidence tends to show a readiness upon his part to aid and promote the formation and success of the com-pany, as by his contract he had undertaken to do. Efforts were being made to interest certain railroads in the enterprise, and to induce land companies at Wytheville and the public generally to take hold of the Newberry Land Company, and aid in its development; but all in vain. The fever of speculation had risen to its utmost height, and was beginning to subside. The price at which the land was purchased from Newberry and that at which it was to be sold to the Newberry Land Company began to be noised abroad, and the whole enterprise came to naught, and perished of inanition.

May 20, 1891, Newberry prepared and tendered a deed, in which the parties to the contract of April 2, 1890, are named as the grantees, and $52,500 as the consideration, following the terms of that contract, and conveying "with general warranty of title one undivided three-fourths part of a certain tract or parcel of land lying in Wythe county on the waters of Reed Creek," etc. The deed was not accepted, and in July Newberry instituted his suit in chancery for specific performance, as already stated.

After the evidence was introduced upon both sides, plaintiffs demurred to defendant's evidence, the jury rendered a verdict for the plaintiffs for $10,000, with interest, subject to the

opinion of the court upon the demurrer to the evidence, and upon this verdict judgment was rendered for the plaintiffs.

In order to recover, it was incumbent upon the plaintiffs to show that they had performed the covenants binding upon them, or that they had been discharged from so doing by the vendor, that they had duly demanded a conveyance, and that it had not been executed. The plaintiffs purchased an undivided three-fourths interest in 700 acres of land. It does not appear that they paid the purchase money, or that they tendered its payment; that they executed the negotiable notes, or tendered negotiable notes executed by them. It does appear that Newberry executed and offered a deed conveying with general warranty the interest which he had contracted to sell, and there is evidence which proves that his title to seven-eighths of that land was at the date of the contract indefeasible, and that the defect with respect to four-fifths of the remaining eighth was promptly removed, and that he was the undisputed owner of the legal title to thirty-nine fortieths of the land in question. But it is said in reply to this that Newberry agreed to unite with the vendees in the formation of a land and improvement company for the development of the land by laying it off into town lots and selling the same, and that he agreed to take the one-fourth interest which he reserved "in the stock of the company in like manner and kind as should be issued to the aforesaid parties." There is evidence tending to show that Newberry in good faith did unite in the formation of the land company referred to, and the time never arrived when he could have been called upon to take the stock in the land and improvement company. Its minimum capital stock was never subscribed. His obligation was not to convey the three-fourths interest to the land and improvement company, but to certain named individuals. That he was ready and offered to do. It was for them under the covenants to convey to this land and improvement company the three-fourths interest purchased by them, or at the least to be ready and able to

do so; and, in that event, they would have been in a position to demand and require of him a transfer of the one-fourth interest to this company upon the issue of stock to him in like manner and kind as had been issued to his vendees for the three-fourths interest. The initial duty, upon which all others depended, was the compliance upon the part of the vendees with their obligation to Newberry to comply with the terms of purchase by making the cash payment and by executing their negotiable notes for the residue. He did not offer to sell his land and take for the deferred payments the negotiable notes of the Newberry Land Company. What he bargained for was the personal responsibility of certain named individuals, and not the corporate liability of an improvement company, which, having obtained a charter, perished before it had ever secured subscriptions to the amount of its minimum capital. All that they were in a position to demand of Newberry he was able and ready to perform. If they had tendered the purchase money for the three-fourths interest, he was in a position to give them a complete marketable title to the three-fourths interest, and it would have been time enough for the plaintiffs to come into court for the breach of his covenant with respect to the one-fourth interest reserved by him when they had discharged the obligation of the covenants resting upon themselves, had paid for the land which they had purchased, had organized a company, and were ready to say to him, "Here is the stock for your share, in like manner and kind as we have taken for our share."

The plaintiffs did not pay or tender the purchase money; they did not execute and deliver, or offer to execute and deliver, their negotiable notes as they contracted to do; they did not demand a deed, such as they were entitled to under this contract; but they did call for a deed to a land and improvement company, and state in it a consideration three times as great as that which was named in the contract with Newberry, and they

Opinion.

did this in order that the truth of the transaction might be concealed from the public. Having purchased land from Newberry at $70,000, they proposed by the organization of the company and the sale of shares to put it off upon the public at just three times that value.

The deed tendered by Newberry follows the very letter of his contract with them. It was his duty to convey an undivided three-fourths interest. He was able to convey a marketable title to thirty-nine fortieths, and now they come into court, relying not upon performance upon their part, but upon his default. Disregarding their own duties, they seize upon an alleged breach of duty which they impute to him, the obligation with respect to which, on his part was dependent upon the performance of antecedent duties and covenants upon their part. In our judgment, defendants in error never reached the point in the execution of their own covenants when they were in a position to question the title of Newberry to the interest reserved by him, and for these reasons we are of opinion that the Circuit Court erred in its judgment, and this court will proceed to enter such judgment as ought to have been rendered.

BUCHANAN, J., who was absent when this case was decided, concurs in this opinion.

*Reversed.*