Present:  Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Poff, Senior Justice

JAMES D. RICHMOND, ET AL.

                                        OPINION BY
v. Record No. 950194       SENIOR JUSTICE RICHARD H. POFF
                                    January 12, 1996
ELMER E. HALL, ET AL.

            FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
                    Duncan M. Byrd, Jr., Judge


     This appeal involves a Bill of Complaint and a Motion for

Judgment filed by a vendee of real estate against the vendor,

alleging a defect in the title.  To remedy the defect, the vendee

sought an allotment in a suit for partition of the remainder

interests conveyed to the heirs at law of four grantees in a

prior deed in the chain of title.[1]  The vendee also demanded an

award of damages sufficient to acquire those interests and to pay

certain costs and attorneys' fees incurred by the vendee.

     The relevant chain of title begins with a deed dated

February 10, 1959 in which J.L. Carper (JLC) and Kathleen Carper

conveyed title to a tract of unimproved land containing 38.7

acres as follows:

     (1) 1/10 undivided interest to JLC for life, remainder

     to his heirs at law;

     (2) 1/10 undivided interest to C. H. Carper (CHC) for

     life, remainder to JLC;

     (3) 1/10 undivided interest to Marshall Leroy Steel

     (MLS) for life, remainder to his heirs at law;

---

[1]In pertinent part, Code § 8.01-83 provides:

          When partition cannot be conveniently made, the entire
          subject may be allotted to any one or more of the
          parties who will accept it and pay therefor to the other
          parties such sums of money as their interest therein may
          entitle them to . . . .

(4) 1/10 undivided interest to Ronald Steel (RS) for life, remainder to his heirs at law; and

(5) 6/10 undivided interest to Donald Lee Steel (DLS) for life, remainder to his heirs at law.

By deed dated March 29, 1971, CHC, one of the five life tenants, acquired the other life estates and JLC's remainder interest as well. CHC then conveyed a portion of the tract, a parcel containing 15.4 acres, to W.W. Carper and Florence J. Carper (collectively, WWC). WWC built a home on that land and, by deed dated May 24, 1977, conveyed the improved parcel to Elmer E. Hall and Violet W. Hall (collectively, Hall). By deed dated September 1, 1985, Hall, who had made further improvements on the 15.4 acre parcel, conveyed the property to James D. Richmond and Diane R. Richmond (collectively, Richmond). The $65,000 purchase price was financed, in part, by Richmond's promissory note payable to Hall in the principal sum of $35,000 with interest at 11.894 percent per annum. The note, secured by a deed of trust and payable in monthly installments, contained a penalty for late payment.

In the fall of 1988, Richmond offered the property as security for a bank loan to pay Hall the balance due on the promissory note and to finance construction of an automobile paint and body shop on the property. A title search disclosed that Richmond did not have fee simple title to the property, the loan application was denied, and Richmond suspended monthly payments on the promissory note in October 1988. Insisting that he had conveyed clear title to Richmond, Hall refused to take any action to cure the defect. On February 1, 1990, Richmond filed a

Bill of Complaint seeking an allotment of the property in lieu of partition. Richmond alleged that he is "the holder of title to a 1/10 undivided interest in fee simple and a life estate determined upon the lives of Donald Steel, Ronald Steel, Marshall Steel and J.L. Carper in the remaining 9/10."

In a decree entered December 21, 1990, the chancellor ruled that "the title to the subject property is as outlined in the plaintiff's Bill of Complaint"[2] and directed the parties to "take evidence by way of deposition to establish the fair market value of the property". That evidence showed that the value of the property with improvements was $87,000.

Richmond filed a Motion for Judgment for breach of warranty on February 19, 1993. Richmond sought $75,000 in damages, the total alleged to be necessary to acquire the remainder interests of the heirs at law of the grantees of the life estates and to pay Richmond's claim for "economic and emotional damages". Hall filed a counterclaim seeking $27,977.19 "in principal", $14,539.67 "in interest", and $1,325 in late charges for "a total amount of indebtedness of" $43,841.86.

Upon consideration of the evidence adduced in the trial of the consolidated actions, the trial court ruled in a letter opinion that the "Plaintiffs are entitled to partition by having

[2]Obviously, the court concluded, and the parties do not disagree, that, when JLC joined his fellow life tenants in the March 29, 1971 deed, he conveyed to CHC, not only the 1/10 life estate he had acquired in the February 1959 deed, but also his fee simple remainder interest in the 1/10 life estate CHC had acquired by that deed. Under the doctrine of merger, those interests merged, and CHC's 1/10 fee simple interest passed by mesne conveyances to Richmond. See Garland v. Pamplin & als., 73 Va. (32 Gratt.) 305 (1879); see also Davis v. Henning, 250 Va. 271, 275, 462 S.E.2d 106, 108 (1995) (merger of dominant and servient estates extinguishes easement).

the real property . . . allotted to them upon payment of the fair market value of the remaindermen interests".  In a final judgment entered October 31, 1994 incorporating the letter opinion, the court fixed the fair market value of the land without improvements at $13,500.  Applying Richmond's "damage calculations" to that figure, the court:  (1) computed the value of the respective remainder interests and fixed their collective value at $2,668.69; (2) awarded Richmond that amount (but denied Richmond's claim of pre-judgment interest); and (3) awarded Richmond $7,234.68 for costs and legal expenses.  On the counterclaim, the court ruled:  (1) that Hall had breached the "General Warranty and English Covenants of title"; (2) therefore, that Richmond was "justified in suspending payment under the Deed of Trust"; and (3) that Hall was not entitled to late charges and counsel fees.  However, sustaining Hall's counterclaim in part, the court held that Richmond was "indebted to [Hall] in the amount of $27,977.19 with interest at the rate of 11.894% from October, 1988 until paid" but that "[a]gainst this judgment [Richmond is] entitled to an offset/credit in the amount of $9,903.37 from the date of entry of this Order".

We awarded Richmond an appeal from discrete parts of that judgment.  Richmond assigns one error related to the equity action and three related to the law action.  We will address those issues seriatim.

I

First, Richmond contends that the chancellor erred in failing to include the value of the improvements made by WWC and Hall as an element of the value of the remainder interests.

In *Effinger* v. *Hall*, 81 Va. 94 (1885), this Court cited the rule that "improvements made by a life-tenant constitute no charge upon the land when it passes to the reversioner or remainder-man . . . ." *Id*. at 109. We explained that "[i]t is a general rule of the common law . . . that every thing annexed to the freehold becomes a part thereof" and that "[i]mprovements are therefore made at the occupant's peril." *Id*. at 101.

The common law rule was modified, in part, by Code § 8.01-166 and its predecessors. Construing that statute, we have said:
> Although this section permits a recovery for improvements when the one who made them mistakenly held the land "under a title believed by him . . . to have been good," we have said that "this section has no application to one who is not a *bona fide* purchaser, and that a person with notice, actual or constructive, of infirmity in his title cannot recover for improvements." *Smith* v. *Woodward*, 122 Va. 356, 376, 94 S.E. 916, 922 (1918).

*White* v. *Pleasants*, 227 Va. 508, 514-15, 317 S.E.2d 489, 492-93 (1984); *accord*, *Richardson* v. *Parris*, 246 Va. 203, 206, 435 S.E.2d 389, 391 (1993).

The rule applied in *Smith*, *White*, and *Richardson* was in full accord with ancient decisions of this Court. In *Morris* v. *Terrell*, 23 Va. (2 Rand.) 6, 13 (1823), we said that "[a] man who purchases an estate subject to an equity, which the title papers disclose, is bound in the same way as if he had actual notice, although he may never have seen the title papers, and may have been assured by the vendor, and believed, that the estate was free from incumbrance." Again, in *Burwell* v. *Fauber*, 62 Va. (21 Gratt.) 446, 463 (1871), this Court held that a purchaser of land "is bound, not only by *actual*, but also by *constructive* notice, which is the same in effect as actual notice" and that "[h]e has

no right to shut his eyes or his ears to the inlet of information, and then say he is a <u>bona fide</u> purchaser without notice."  <u>Accord</u>, <u>Chavis</u> v. <u>Gibbs</u>, 198 Va. 379, 383, 94 S.E.2d 195, 198 (1956).

For two reasons, Code § 8.01-166 is inapplicable.  The statute expressly requires a "defendant against whom a decree or judgment shall be rendered for land" to "present a pleading to the court . . . moving that he should have an allowance" for improvements he has made; Hall filed no such pleading in the court below.  And, under the law consistently applied by this Court, Hall was not a <u>bona fide</u> purchaser within the intendment of this statute.  <u>Richardson</u>, 246 Va. at 207, 435 S.E.2d at 392; <u>Kian</u> v. <u>Kefalogiannis</u>, 158 Va. 129, 133-35, 163 S.E. 535, 537-38 (1932).

In defense of the trial court's ruling, Hall invokes the equitable principles that one who seeks equity must do equity and not unjustly enrich oneself at the expense of another.  Hall contends that, to deny those who made the improvements the value they added to the freehold, would be to provide "a windfall to the heirs of J. L. Carper and the three Steels."

Hall relies upon, but misconstrues, a discussion of equitable principles in <u>Effinger</u>, 81 Va. at 101-102.  Concluding its discussion, the Court said that a claim by a former occupant under a defective title for the value of improvements annexed to the fee "is founded upon equitable grounds, and it would be manifestly inequitable to compel the true owner to pay for improvements which were not directed, nor, perhaps, desired by him, and which were made by the occupant with knowledge of the

former's claims."  Id. at 102.  As applied in paraphrase to this case, that language declares that it would be inequitable to compel the remainder owners to surrender to Hall the value of improvements that he and WWC annexed to the fee if those improvements were made with knowledge of the remainder interests.

While it is true, as Hall says, that "[h]e did not have actual notice of title deficiencies", the case law holds that he had constructive notice and that he made the improvements at his own peril.  Where the equities are equal, "a Court of Equity will not interpose between two innocent men, but will let the law prevail."  Johnson v. Brown, 7 Va. (3 Call) 259, 264 (1802); accord, Williams v. Gifford, 139 Va. 779, 785, 124 S.E. 403, 405 (1924).

Here, Hall as vendor and Richmond as vendee were equally innocent of creating the infirmity in this title; but, as concerns their reciprocal rights and obligations, Hall was the party in default and Richmond was the victim.

Citing Quillen v. Tull, 226 Va. 498, 502, 312 S.E.2d 278, 280 (1984), Hall also contends that "a tenant in common is entitled to credit for the increased value in the land resulting from his improvements"; but Hall was not a tenant in common with the owners of the remainder interests.  "A tenancy in common is where two or more persons hold lands or tenements in fee simple . . . or for term of life or years . . . and occupy the same lands or tenements in common . . . ."  Whitby v. Overton, 243 Va. 20, 24, 413 S.E.2d 42, 44 (1992) (quoting from 1 John T. Lomax, Digest of the Laws Respecting Real Property 498 (1839)).  As we have said (see footnote supra), under the doctrine of merger,

Hall was the owner of a 1/10 fee simple interest in the property with the right of occupancy. The remaindermen's fee simple interests are contingent upon their survival of the respective life tenancies. Hence, the remaindermen had no contemporary right of occupancy, there was no tenancy in common, and the decision in Quillen is inapplicable.

Accordingly, applying the rules at common law, we hold that the trial court erred in excluding the value of improvements as an element of the value of the remainder interests.

## II

Second, Richmond maintains that the trial court should have awarded interest "on the amount due the remaindermen during the pendency of the partition suit." We disagree.

Richmond alleged that his title was defective. Hall denied that allegation. That dispute, the value of the remainder interests, and the quantum of the allotment remained undecided until the entry of judgment. Not until then did that amount become "due and payable" and, until then, interest did not begin to run. Columbia Heights v. Griffith-Consumers, 205 Va. 43, 48, 135 S.E.2d 116, 119 (1964); Beale v. Moore, 183 Va. 519, 523, 32 S.E.2d 696, 698 (1945); Parsons v. Parsons, 167 Va. 374, 382, 189 S.E. 448, 452 (1937).

## III

Third, Richmond argues that the trial court erred in granting Hall pre-judgment interest on the unpaid balance of the purchase money note after ruling that Richmond was justified by Hall's breach of warranty in suspending payment pending judgment.

Under Code §§ 55-70 to -74, a grantor who executes a deed

using the words "with general warranty" and "with English covenants of title" covenants that "he is seized in fee simple of the property conveyed"; that he had "the right to convey . . . the land, with all the buildings thereon"; that he had done "no act to encumber the said lands"; that he would execute such "further assurances" as may be required; and that the grantee would have "quiet possession of the said land . . . with all the buildings thereon".

Upon delivery of his deed to Richmond, Hall breached the warranties and covenants required by statute. When Richmond learned of the title defect and elected to sue Hall for an allotment and for damages for breach of contract, he chose to affirm rather than to rescind the contract. Newberry v. Ruffin, 102 Va. 73, 78, 45 S.E. 733, 734 (1903). Consequently, it was incumbent upon Richmond to prove performance or to tender performance of the contractual commitments he had made or to prove "facts sufficient to excuse [him] for failure to perform or tender performance." Id.

In its letter opinion, the trial court found that Richmond had proved facts sufficient to excuse nonperformance, that is, that Hall had breached the warranties and covenants. Confirming that finding, the court ruled in the final judgment order that, pending judgment, "the plaintiffs, therefore, were justified in suspending payment under the Deed of Trust." We agree with that ruling, and Hall assigns no cross-error. However, we disagree with the court's ruling in the final judgment order that Hall was entitled to interest at the contract rate on the monthly installments from the date payment was suspended in October 1988

until the date judgment was entered in 1994.

The two rulings are logically irreconcilable. The first ruling excused Richmond's failure to perform or tender performance pending judgment. As we have said, an obligation to pay interest begins when the debt is due and payable. Columbia Heights v. Griffith-Consumers, supra. Thus, payment of the unpaid balance of the purchase money note was not due and the obligation to pay interest did not begin until judgment was entered.

Consequently, we hold that the trial court erred in ruling that Hall is entitled to pre-judgment interest at the contract rate on the unpaid balance of the purchase price.

IV

Fourth, Richmond complains of "the trial court's ruling that the interest to be paid to Hall by Richmond was to be calculated with reference to the amount of the judgment awarded to Hall before the offset of the amount of the judgment awarded to Richmond."

In light of our holding above, this issue is moot.

V

In summary, we will reverse the judgment in part and affirm the judgment in part. (1) The decision excluding the value of the improvements as an element of the value of the remainder interests and (2) the decision awarding Hall pre-judgment interest at the contract rate on the unpaid balance of the purchase price will be reversed. (3) The decision denying pre-judgment interest on the value of the remainder interests will be affirmed and (4) the issue underlying the decision concerning the

offset will be dismissed as moot.  We will enter final judgment in this Court.  (1)  Applying the "damage calculations" formula applied by the trial court, Code §§ 55-269.1, et seq., to the $87,000 fair market value of the property as improved, we compute the values of the several remainder interests and require Richmond to make payments to the owners as follows: to JLC, $5,885.38; to MLS, $1,904.26; to RS, $1,563.22; to DLS, $8,034.62; total, $17,387.48.  (2) Crediting that total and the $7,234.68 for costs and legal expenses Richmond incurred at trial against the $27,977.19 unpaid balance of the purchase money note, we will require Richmond to pay Hall $3,355.03.  (3) We will require the clerk of the trial court to release, by notation on the margin of the deed book, the lien of the deed of trust executed by Richmond.  (4) We will appoint R. Creigh Deeds and Michael McHale Collins Special Commissioners instructed, upon payment of the money due Hall and the several owners of the remainder interests, to execute and deliver a deed conveying fee simple title to the 15.4 acre parcel to Richmond.

<u>Affirmed in part,
reversed in part,
and final judgment</u>.