# CIRCUIT COURT OF FAIRFAX COUNTY

James Bremer et al.

v.

George E. Bitner et al.

## Case No. (Chancery) 143320

By Judge Arthur B. Vieregg, Jr.

### March 25, 1996

After reviewing the authorities presented by the parties with regard to the amount of the injunction bond to be required in the captioned case, I conclude that it is within the court's discretion to set the bond amount.

Section 8.01-631, governing injunction bonds, provides in pertinent part:

> [N]o injunction shall take effect until bond be given in such penalty as the court awarding it may direct, with condition either to pay the judgment or decree, proceedings on which are enjoined, or have the property forthcoming to abide the future order of the court, and in either case to pay such costs as may be awarded against the party obtaining the injunction, *and* all such damages which may be incurred, in case the injunction shall be dissolved
> . . . .

(Emphasis added.)

The plain meaning of the statute requires a court ordering an injunction to set a bond in at least the amount of the enforcement of a judgment to be

enforced in the proceedings enjoined, or to set the bond necessary to protect the enjoined party in the event property subject to a future order of the court is not forthcoming. In addition, the bond must be sufficient to cover costs and damages.

In the present case, the noteholders are not parties and have not sued on the complainants' note. Accordingly, the first disjunctive provision need not be addressed, and this Court's inquiry will be limited to the amount of bond necessary to assure that the property subject to the enjoined foreclosure sale will be forthcoming. The complainants in effect argue that because the collateral subject to foreclosure is a building, it will necessarily be forthcoming and the injunction bond should be limited to interest accruing while the foreclosure is enjoined. I reject that argument. This case involves the foreclosure sale of an office building but not the ground on which it is situated. The injunction bond amount then must be a sufficient substitute for the collateral in the event it is destroyed pending the injunction. Clearly, such improvements are subject to destruction.

No evidence was presented by either party as to the value of the collateral. Nevertheless, in these circumstances, the court will infer that the value of the improvements are at least the amount of the debt for which they stand as security. Indeed, one of the arguments advanced by the complainants is that no significant irreparable harm will likely be visited upon the trustee because the loan is secured. In a colloquy during last week's hearing, the question of insurance was broached by the court, and complainants' counsel indicated that the building was insured. However, there are too many examples of insurance companies attempting to avoid coverage for this Court to require the enjoined parties to accept the added risk of whether full casualty coverage presently exists on the building.

For the reasons indicated above, I have modified my order of March 20, 1996, to provide that an injunction bond in at least the amount of $550,000.00 be posted on or before 4:00 p.m. on Tuesday, March 26, 1996.

## August 13, 1996

On July 3, 1996, the defendants George E. Bitner et al. filed a motion for summary judgment seeking the dismissal of the captioned suit for declaratory and injunctive relief based upon statutory and common law recoupment claims brought by the complainants, James Bremer et al.

First, Bitner contends that the statutory recoupment claim is barred by the statute of limitations and, therefore, must be dismissed. This Court concurs that dismissal of the statutory recoupment claim is appropriate. After

reviewing the decision of the Supreme Court of Virginia in *Bremer v. Doctor's Bldg. Partnership*, 251 Va. 74 (1996), I conclude that after the Supreme Court of Virginia adopted Rule 3:8 permitting the filing of counterclaims in law actions, the General Assembly amended Virginia Code § 8-241 to eliminate the remedy of statutory set-off. Accordingly, when a defendant is sued as a consequence of a transaction, the defendant may either file a permissive counterclaim or file an independent action against the plaintiff. The Defendant, however, may no longer rely on statutory recoupment. *See, id.* at 76, n. 3. Such causes of action, however, are only viable if not untimely, as was the case with statutory recoupment claims for the reasons set forth in my earlier opinion granting temporary injunctive relief to Bremer.

Second, Bitner contends that Bremer's claims in common law recoupment for breach of contract and fraud must also be summarily dismissed. Bitner essentially contends that Bremer's right to advance common law recoupment claims depends upon the recognition of those claims in my earlier decision granting temporary injunctive relief. No authority is cited for this proposition, nor am I cognizant of any such authority. Since common law recoupment is not time barred if the plaintiff's action in which it is asserted is not time-barred, *City of Richmond v. Chesapeake & Potomac Tel. Co.*, 205 Va. 919 (1965), Bremer will be permitted to proceed on each of the theories pleaded for declaratory and injunctive relief based on common law recoupment.

## April 2, 1997

I have received the motion for reconsideration filed on behalf of the defendants Doctors Building Partnership. I find the arguments of the Doctors unpersuasive.

The Doctors' principal contention is that this Court afforded too expansive a reading to *Richmond v. Hall*, 251 Va. 151 (1996). In *Richmond*, the Supreme Court of Virginia held that a vendee receiving a deed with English covenants of title was not liable for payments or interest on a deferred purchase money note in view of the vendor's failure to deliver good title. The Doctors contend *Richmond* is limited to cases involving the breach of covenants of title to real estate. I disagree.

In deciding *Richmond*, the Supreme Court, citing *Columbia Heights v. Griffith-Consumers*, 205 Va. 43, 48 (1964), a case not involving title to real property, based its decision on the contractual principle that an obligation to pay interest begins when the debt is due and payable. *Id.* at 160.

This principle is broader than a breach of covenants in deeded real estate. It applies to all contracts to pay interest which have been materially breached by a party. And as applied, a contracting party materially breaching a contract is not entitled to interest until the innocent party affirming the contract and suing for damages has been indemnified for the breach.

Here, the Doctors similarly breached their warranties that the Doctors Building was free of Code violations, a material breach of the contract. The Castleway partners affirmed the contract and claimed damages by way of recoupment. In accordance with *Richmond*, until the Castleway partners were made whole, the Doctors may not recover principal, interest, and attorney's fees otherwise due.

Not only have the Doctors misread *Richmond*, they have misread cases cited to this court. For example, *Cohen v. Jenkins*, 125 Va. 635 (1919), a case mightily advocated by the Doctors as controlling, is inapposite because the vendor had not materially breached the covenants in the deed. Although pre-existing deeds of trust were once executed, the enforcement of these deeds was time barred. Other cases cited were otherwise inapposite to the issue here.

The Doctors' motion for reconsideration is accordingly denied.

February 10, 1998

This cause arises out of complainant Castle Way's 1983 purchase of a Falls Church office building, the Doctors Building, from Defendant, the Doctors Building Partnership ("Doctors Partnership"). In accordance with the terms of that purchase, Castle Way delivered a deferred purchase money note to the sellers, which note was secured by the Doctors Building. Disputes eventually arose between the parties as to warranties made by the Doctors Partnership of the condition of the building. Castle Way refused to pay the note in accordance with its terms. In 1993, Doctors Partnership filed suit for judgment on the note but at trial nonsuited its action. In February, 1996, the Doctors Partnership substituted defendant, George M. Bitner, as trustee under the deed of trust securing the Castle Way note and directed him to advertise the foreclosure sale of the Doctors Building. Bitner thereupon advertised the note for foreclosure but refused to cancel the sale, even after Castle Way notified him of recoupment claims against the note based upon Doctors Partnership's breach of warranties as to the condition of the building. Shortly in advance of the foreclosure sale, Castle Way initiated this cause, seeking the temporary and permanent injunction of the foreclosure and other relief, including, *inter alia*, an award of dam-

ages against Bitner for his alleged breach of fiduciary duty by proceeding with the foreclosure sale.

On March 21, 1996, this Court enjoined the foreclosure and in February, 1997, conducted a hearing to adjudicate the rights and obligations of the Doctors Partnership and Castle Way under the Castle Way note. By order entered on March 11, 1997, this Court found that Castle Way was entitled to recoupment of amounts otherwise owed under the note due to the Doctors Partnership's breach of warranties as to the condition of the Doctors Building when it was conveyed to Castle Way. *See* Order of March 11, 1997.

On October 27, 1997, Castle Way's claims against Bitner were litigated. I am now prepared to decide Castle Way's claim that Bitner violated fiduciary duties owed to Castle Way by his failure to cancel his advertised foreclosure sale of the Doctors Building in the face of Castle Way's recoupment claims. The facts giving rise to Castle Way's breach of fiduciary duty claim are set forth below.

## I. *Facts*

Pursuant to the terms of a Purchase Agreement and an Addendum, dated respectively, July 9, 1983, and July 22, 1983, Castle Way purchased the Doctors Building on July 22, 1983, from the Doctors Partnership. Part of the consideration for the conveyance of the building was Castle Way's promissory note. Castle Way, thereafter, discovered defects in the building. Castle Way eventually ceased making payments under the note, claiming by way of recoupment damages suffered on account of warranties allegedly breached by Doctors Partnership. By terms of the parties' agreements, these warranties were not merged into the Doctors Partnership deed of conveyance. I previously ruled such recoupment claims were not time barred. Letter Opinion, August 13, 1996.

On August 12, 1993, the Doctors Partnership filed an action for judgment on the note. However, in the course of trial, Doctors Partnership nonsuited that action. *See, Bremer v. Doctor's Bldg. Partnership*, 251 Va. 74 (1996).

On or about February 1, 1996, the Doctors Partnership engaged Bitner to act as substitute trustee under the deed of trust securing Castle Way's note at the rate of $150 per hour. After counsel for the Doctors Partnership informed Bitner of the history of the case, including the fact that Castle Way had failed to pay amounts due pursuant to the note, Bitner (i) was substituted as trustee under the Doctors Partnership deed of trust; and (ii)

on February 7, 1996, advertised to sell the building at public auction on March 21, 1996.

After conversations earlier in February 1996, Matthew A. Clary, counsel for Castle Way, wrote a February 22, 1996, letter to Bitner summarizing the basis for Castle Way's recoupment claims and requesting that he cancel the sale. Bitner ignored that demand. At his deposition, and later at trial, Bitner stated that while he owed Castle Way a limited fiduciary duty, he considered his principal obligations to be owed to the Doctors Partnership who had hired him.[1]

Castle Way thereafter successfully applied to this Court for an injunction pending resolution of Castle Way's recoupment claims against the amounts owed under the note. In accordance with Virginia Code § 8.01-631, Castle Way posted an injunction bond in the amount of $550,000.00. To obtain the bond, it paid the injunction bond surety a premium of $4,125.00.

Castle Way's recoupment claim was primarily based on express warranties contained in the Purchase Agreement and Addendum that the Doctors Building met all building code requirements. Castle Way sought, *inter alia*, to have damages based on the breach of those warranties set off against the amounts owed under the deferred purchase money note. Castle Way also sought damages against Bitner for his alleged violation of fiduciary duties as trustee under the note.

A hearing was held on February 19, 1997, addressing the Doctors Partnership's note claims and Castle Way's recoupment defenses. This Court found that Castle Way was entitled to recoupment against the note balance in the amount of $52,295.00 and further determined that the amount owed by Castle Way pursuant to the note was $343,262.00. *See,* Order of March 11, 1997. This Court ruled that the Doctors Partnership was not entitled to interest under the note during the pendency of the recoupment suit. Order of March 11, 1997.

---

[1] This letter opinion supplants my prior letter opinion dated December 4, 1997. In that letter, the final sentence of this paragraph stated that Bitner considered himself to be acting as an agent for the Doctors Partnership. Counsel for Mr. Bitner objected that Mr. Bitner did not testify at trial that he was acting as agent for the Doctors Partnership. A review of his trial testimony confirms Mr. Bitner did not expressly state he was an agent for Doctors Partnership, although the record contains statements to the effect that the Doctors Partnership was his client and that his principal obligations were owed to Doctors Partnership.

By agreement, the trial of Castle Way's breach of fiduciary duty claims against Bitner had been postponed until October 27, 1997, pending the disposition of the claims under and to the note. At trial, Castle Way contended Bitner, as trustee under the deed of trust, had been obligated to seek the aid and guidance of a court of equity before foreclosing under the deed of trust securing the Castle Way note. Castle Way further contended that by foreclosing without seeking such aid and guidance, Bitner had breached fiduciary obligations owed to Castle Way causing Castle Way injury: attorney's fees incurred to enjoin the foreclosure sale and injunction bond premium costs. At trial, Castle Way's attorney, Matthew Clary, generally testified it had been necessary for Castle Way to seek an injunction of the foreclosure sale in the face of Bitner's refusal to desist from cancelling that sale. Both Clary and his partner, Richard Moore, authenticated bills submitted to and paid by Castle Way for legal services performed to obtain the injunction. Significantly, Messrs. Clary and Moore did not describe the specific services represented by entries on their bills. Clary did testify that his firm's fees were fair, reasonable, and necessary. Castle Way seeks damages in the amount of attorney's fees and costs enumerated on their bills, as well as the injunction bond premium.

At the October 27th hearing, Bitner contended his failure to cancel the foreclosure sale of the Doctors Building was not improper. He testified he had reviewed the deed of trust and purchase agreements and had concluded Castle Way had failed to pay its note in accordance with its terms and was in default and the Doctors Partnership was therefore entitled to foreclose. Bitner based his position on the fact that Castle Way's recoupment claim had been pleaded in the original action on the note brought by Doctors Partnership but had never been adjudicated. He testified that since Castle Way had failed to pay the note pursuant to its terms and since no litigation related to the allegedly breached warranties was pending, foreclosure proceedings were appropriate. Bitner further testified that, while he had received the letter from Clary requesting cancellation of the foreclosure sale, he believed his primary duty was owed to the noteholder. William Gorman, a local attorney specializing in real estate law, testified that Bitner acted in accordance with accepted practices of trustees in foreclosure situations but disclosed no situation analogous to those before the Court. He opined, based on his experience and his review of Virginia Supreme Court decisions, that since Castle Way's claim did not arise out of the note, Bitner did not have an obligation to evaluate the recoupment claim.

512

## II. *Decision*

This case frames four issues:

1. Whether, in view of Castle Way's recoupment claim, Bitner owed a fiduciary obligation to Castle Way to seek the aid and direction of a court of equity before foreclosing?

2. In the event Bitner violated a fiduciary duty owed to Castle Way by failing to seek the aid and direction of a court of equity, may Bremer recover damages caused by Bitner's violation of those fiduciary duties?

3. If so, did Castle Way prove it sustained injury caused by Bitner's decision to foreclose?

4. Did Castle Way prove the damages claimed?

### A. *A Trustee's Fiduciary Duty to Seek Aid and Direction*

Virginia law is clear: a trustee owes fiduciary obligations to both the creditor and the debtor in executing the powers granted him under a deed of trust. *Smith v. Credico Indus. Loan Co.*, 234 Va. 514 (1987). He must "act toward each with perfect fairness and impartiality." *Powell v. Adams*, 179 Va. 170, 174 (1942).

Therefore, a trustee may not permit the insistence of the creditor in seeking to realize on security to force a sale which would unfairly injure the debtor. *Linney v. Normoyle*, 145 Va. 589 (1926). In particular, a trustee has a duty to seek the aid and direction of a court of equity before foreclosing if the amount of the debt is uncertain. *Morriss v. Virginia State Ins. Co.*, 90 Va. 370 (1893). And, a trustee is obligated to seek such aid and direction on his own motion. *Hogan v. Duke*, 61 Va. (20 Gratt.) 244, 253 (1871).

In view of these duties, if the amounts owed by Castle Way to the Doctors Partnership were in question, Bitner had an obligation to seek the aid and direction of this Court before foreclosing. Recoupment is a form of setoff arising out of the contract sued on, *Dexter-Portland Co. v. Acme Co.*, 147 Va. 758, 766-67 (1926), here the Castle Way note held by the Doctors Partnership for which the warranties allegedly breached were consideration.[2] Accordingly, Bitner had a duty to seek the aid and direction of an

---

[2] In his expert testimony, Gorman testified that Bitner's actions accorded with accepted practices of trustees instructed to foreclose under a deed of trust, that is the trustee was not obligated to investigate claims which did not arise under the note. He therefore either (i) seemingly failed to recognize that Castle Way's recoupment claims constituted consideration for the note foreclosed upon; or (ii) incorrectly concluded that such a pa-

equity court to determine the amount of those claims which might be recouped against the Doctors Partnership note thereby reducing the secured debt.[3] Because he failed to cancel the foreclosure sale of the Doctors Office Building and because he failed to seek the aid and direction of a court of equity, I find Bitner breached fiduciary duties owed to Castle Way.

## B. *The Availability of Damages to Redress a Trustee's Breach of the Fiduciary Duty to Seek Aid and Direction*

During oral argument, Bitner's counsel stated that no Virginia court has awarded damages for a trustee's failure to seek aid and direction. From this circumstance, he urged that the law will not require a trustee to answer in damages for his failure to seek aid and direction. This Court rejects that proposition, made as it is without supporting authority and necessarily suggesting that the law might recognize fiduciary duties on one hand without affording relief for the violation of such duties on the other. *See Price v. Hawkins*, 247 Va. 32, 37 (1994).

It is not surprising that the parties have found no Virginia decision awarding an obligor damages for a trustee's failure to seek aid and direction. In the event a trustee breaches that fiduciary duty, the obligor enjoys the right to seek such aid and direction. *Muller v. Stone*, 84 Va. 223 (1888). In view of the availability of such relief, a maker of a note would seldom suffer injuries. This ready explanation notwithstanding, a debtor's right to seek aid and direction does not *ipso facto* negate an action for damages caused by the trustee's failure to fulfill his fiduciary duties.

## C. *Causation of Castle Way's Damages*

Castle Way has the burden of proving that the damages sought were caused by Bitner's breach of fiduciary duty. *Hiss v. Friedberg*, 201 Va. 572 (1960); *see Orebaugh v. Antonious*, 190 Va. 829 (1950).

---

tial failure of consideration could not, as a matter of law, affect the amounts owed pursuant to the note.

[3] This is especially the case here, since, as argued by Bitner's counsel, the defense of recoupment is a unique one, not often confronted by courts and attorneys. Before a trustee could intelligently make a decision whether or not to foreclose, he would first be required to apprise himself of the legal and factual foundations for such a defense since its validity affected the amounts owed pursuant to the note to be foreclosed upon. There is no indication in the record that Bitner did so.

The critical inquiry thus becomes whether Castle Way has demonstrated it was required to seek an injunction to forestall foreclosure. It is clear that when Bitner's deadline for canceling the foreclosure came and went on February 27, 1966, Castle Way had a limited period of time to forestall the imminent March 21 foreclosure. While Castle Way might then have filed an aid and direction motion instead of an injunction petition, in view of this Court's crowded docket, it is improbable that a full plenary hearing could have been held without postponing the foreclosure sale. Thus, the obtainment of injunctive relief would have been necessary even had Castle Way sought an aid and direction hearing. Castle Way's incurrence of legal fees to obtain an injunction of the foreclosure were therefore caused by Bitner's refusal to cancel the foreclosure and to seek aid and direction.

Castle Way claims that Bitner's breach of fiduciary duty caused Castle Way two categories of injury: (i) injunction bond premiums of $4,125.00 and (ii) attorney's fees incurred to enjoin the foreclosure sale. To prove its damages, Castle Way elicited the general testimony of Messrs. Clary and Moore that all of their legal services were necessary to conduct the injunction hearing of March 18, 1996.

## D. *Castle Way's Damages*

If a party is entitled to recover attorney's fees and expenses, a factfinder must determine what fees and expenses are reasonable. *Mullins v. Richlands Nat'l Bank*, 241 Va. 447 (1991). Reasonableness must be determined on the basis of the particular facts and circumstances of each case. *Tazewell Oil v. United Va. Bank*, 243 Va. 94, 111 (1992). In determining whether fees incurred are reasonable, the factfinder should consider the time consumed, the effort expended, and the nature of the services rendered. *Id.* at 112. The party seeking recovery of such fees has the burden of proving these factors. *Greenwald Cassel Assoc. v. Guffey*, 15 Va. App. 175 (1994), *citing, Hensley v. Eckerhart*, 461 U.S. 424, 437 (1982). However, expert testimony is not necessarily required; detailed time records and affidavits, unrebutted by any other evidence, may be sufficient. *Tazewell*, 243 Va. at 112.

After considering the facts of this case,[4] after reviewing the Clary and Moore bills, after considering what fees incurred were reasonable in view of the scope of the hearings conducted, and taking into account the failure of Clary and Moore to precisely detail all services comprehended by their bills or to explain why duplication of partner services was proper, I find that legal fees of $13,055.00 were reasonable, necessary, and recoverable. I additionally find that Castle Way is entitled to recover its injunction bond premium paid of $4,125.00.

*Conclusion*

For foregoing reasons, this Court finds that Mr. Bitner violated fiduciary duties owed to Castle Way by his refusal to postpone the foreclosure sale of the Doctors Building and his insistence to proceed with foreclosure and that Castle Way is entitled to judgment for damages in the amount of $17,180.00.

---

[4] I also conclude that none of Clary and Moore's services conducted prior to Clary's written deadline, February 27, 1996, are recoverable. Castle Way's own evidence demonstrates that Clary did not anticipate that such a decision would be made before that deadline. Plaintiff's Exhibit # 6.