SHEDD, Circuit Judge, dissenting:
Terrence Batzli’s Professional Liability Insurance Policy with Minnesota Lawyers Mutual does not cover an error made prior to the liability policy’s date, “which an insured knows or reasonably should know, would support” a demand for damages. (J.A. 25.) The majority holds that there was sufficient evidence for the jury to find that Batzli lacked, or that any reasonable person in his position would have lacked, such knowledge under the facts of this case. In my view, Batzli reasonably should have known, as a matter of law, that he faced a potential demand for damages from Mr. Chasen. Therefore, with due respect, I dissent.
As the majority correctly notes, when determining whether sufficient evidence exists to support a jury verdict, “we may not substitute our judgment for that of the jury.” Price v. City of Charlotte, N.C., 93 F.3d 1241, 1249 (4th Cir.1996). However, “[wjhile we are compelled to accord the utmost respect to jury verdicts ... [we] have a duty to reverse the jury verdict[ ] if the evidence cannot support it.” Id. at 1249-1250 (internal citations omitted).
The evidence presented in this case cannot support the jury verdict. The record clearly establishes that Batzli knew he had committed a significant error and that his error could support a claim for damages. Batzli believed that there was an agreement between Mr. and Ms. Chasen, pursuant to which Ms. Chasen would give her 20% interest in Chasen Properties, LLC to Mr. Chasen. Batzli drafted a property settlement agreement (“the Agreement”) between Mr. and Ms. Chasen with the intent of ensuring Mr. Chasen would receive Ms. Chasen’s 20% interest. However, Batzli admittedly made an error in drafting the Agreement and testified to this fact before the jury, stating:
And that’s where I made the error. I said “his interest.” It should have said “their interest” in Chasen Properties, LLC.
(J.A. 258.) Batzli also admitted his error to Mr. Chasen in a letter and, consequently, offered to bear the costs of the action in state court to correct the error. Moreover, upon realizing his error, Batzli said that he felt sick about it and had lost sleep over it.
Finally, Batzli knew this error resulted in significant financial and personal costs for Mr. Chasen. Batzli knew Mr. Chasen believed the 20% interest was worth $440,000. In addition to the monetary value, Batzli also knew how important it was to Mr. Chasen’s business that he receive Ms. Chasen’s 20% interest. Without that 20% interest, Mr. Chasen stood to lose control of Chasen Properties, LLC. Mr. Chasen explicitly expressed this concern to Batzli in a letter, writing:
[W]ith only a 20% ownership on my part, it would be easy for her and the kids to remove me as director/manager of chasen properties [sic]. If I own at least 34% ... it is more difficult for them to remove me form [sic] that roll [sic] and Karen [Ms. Chasen] can have no part of the process. I just can not [sic] have Karen owning part of any *56 entity that I am part of ... much less part of my business location!
(J.A. 461.) Furthermore, in a letter to Batzli’s law partner, who worked on the case with Batzli, Mr. Chasen wrote that he was “still in shock that the appeal [to correct the error] failed on all fronts,” (J.A. 551) and Mr. Chasen did not respond to Batzli’s request for payment of the attorneys’ fees incurred in the state court action. Against this factual backdrop, Batzli should have known that his error would support a demand for damages.*
Despite these facts, the majority concludes there is sufficient support for the jury verdict based largely on evidence that addresses the merits of Mr. Chasen’s malpractice claim. Such evidence is irrelevant as to whether a reasonable lawyer could expect a demand for damages. The liability policy requires only that the insured report an act, error, or omission that would support a demand for damages, not that such a demand would ultimately be successful.
The majority believes that testimony by Ms. Chasen that she would never have relinquished her 20% interest supports the jury verdict. The majority reasons that Mr. Chasen was not damaged because in a divorce action, Mr. Chasen was not legally entitled to have this non-marital asset included in a settlement. However, Ms. Chasen’s testimony actually underscores the materiality of Batzli’s admitted error. Because the divorce court did not have jurisdiction over and could not award Ms. Chasen’s 20% interest through a court order, the only way Mr. Chasen could have received her 20% interest was through the Agreement, which Batzli failed to properly draft.
Additionally, as support for the jury verdict, the majority relies upon the fact that Mr. Chasen did not want to set aside the Agreement. This fact, as well, is irrelevant as to whether Batzli should have known if Mr. Chasen would have a claim for damages. Mr. Chasen negotiated the Agreement to receive a number of assets, including Ms. Chasen’s 20% interest in Chasen Properties, LLC. The fact that Mr. Chasen wanted to keep what he actually received in the otherwise favorable Agreement is irrelevant in determining whether he was entitled to what he thought he had also received — Ms. Chasen’s 20% interest. Therefore, Batzli should have known that his error would support a claim for damages despite the fact that Mr. Chasen was, overall, satisfied with the Property Settlement. See 17A Am.Jur.2d Contracts § 708 (“As a general rule, upon the breach of a contract, the injured party may, by election, rescind and recover the value of any performance, or stand by the contract and recover damages for the breach.”); Richmond v. Hall, 251 Va. 151, 466 S.E.2d 103, 107 (1996) (recognizing that rescission and a suit for damages are alternate contractual remedies).
In sum, the evidence in this case clearly establishes that Batzli should have known that he made an error that would support a demand for damages and failed to report this error to the insurance company. Pursuant to the plain language of the liability policy, this claim was not covered and, therefore, the insurance company did not have a duty to defend or indemnify Batzli against Mr. Chasen’s malpractice claim. *57 For this reason, I would reverse the judgment of the district court and enter judgment in favor of Minnesota Lawyers Mutual.

 The majority asserts that Batzli could not reasonably expect a claim for damages because Mr. Chasen had suffered no damages. To the contrary, Mr. Chasen was damaged. Mr. Chasen agreed to the settlement with die understanding that he would be receiving Ms. Chasen’s 20% interest in Chasen Properties, LLC. Therefore, Mr. Chasen’s damages are— at a minimum — the difference between what Mr. Chasen paid for the Agreement and what he would have paid for a settlement that did not contain Ms. Chasen’s 20% interest.